### Wilbur S. Deuel v. Henry I. Higgins and Others.

The vendee of a steam engine which proved of little or no value, defended a suit for the purchase price, claiming that he bought with warranty, and relying upon declarations or statements made by the vendor at the time of the sale to establish the warranty. But it appeared that after the engine had been thoroughly tested and proved a failure, he had written letters to the vendor from time to time, apologizing for not paying for the engine as he had agreed, and asking further time, in none of which was any allusion made to a warranty, or claim set up to damages. These letters were held to satisfactorily negative the idea that the statements of the vendor at the time of the sale were regarded by the parties as a warranty.

*Heard April 4th. Decided May 1st.*

Appeal from Genesee Circuit in Chancery.

*H. K. Clarke*, for complainant.

*W. M. Fenton*, for defendant Higgins.

MANNING J.:

The bill is to foreclose a mortgage given by defendants Higgins and wife, to Thorne Deuel, and assigned by him to complainant. The other defendants are subsequent pur-

chasers, against whom the bill has been taken as confessed. The defense of Higgins and wife is, that the mortgage was given to secure, in part, the purchase money of a steam engine and boiler, bought by Higgins of the mortgagee, with a warranty that the boiler would make steam sufficient to run one large upright saw for sawing logs into lumber. The engine and boiler had been used by the vendor for manufacturing lumber a number of years, but how many in all does not appear. Nor does it appear that they were in use at the time of sale, or how long previous thereto the vendor had discontinued the manufacture of lumber. They were taken down and removed quite a number of miles to Higgins' mill, where they were put up, and the boiler, either from previous wear or some latent defect, was soon found not to come up to the requirements of the alleged warranty, and after a short time was thrown aside and replaced by a new boiler.

Several questions were made on the argument to the admission and rejection of evidence in the court below, which, as we view the case, it is unnecessary to decide; for admitting the deposition of Blackmore, and rejecting the testimony of Thorne Deuel, as insisted on the part of the defense, the warranty, we think, is not established by the proofs in the case. There was no warranty in express terms, but it is insisted that a warranty is to be implied from the representations made by Deuel, and relied on by Higgins at the time the latter purchased. It is always, in the absence of an express warranty, more or less difficult to determine whether the declarations of a vendor are to be regarded as an expression of an opinion by him, or as an undertaking on his part for the truth of what he states. In the present case, we are relieved of this difficulty by the letters of Higgins to Deuel, of the 31st of March, 1851, August 1st, 1851, and April 9th, 1852, which are as follows:

DEUEL v. HIGGINS.

"FLINT, March 31, 1851.

T. DEUEL,

*Dear Sir:* In consequence of the failure of the boiler we had of you, after putting everything in order, and the total insufficiency of power to drive one upright saw, we have been obliged to stop operation and put in a new one alongside, and shall not be able to commence work again before the middle of April; all of which has been a heavy expense to us, so that we shall not be able to pay you this spring the amount going to you; will you have the kindness to extend the payment one year by paying you up the interest? if so, you will very much oblige me.                 Respectfully, yours,

H. I. HIGGINS."

"FLINT, August 1, 1851.

T. DEUEL, ESQ.

*Dear Sir:* Yours under date 2d July, was duly received; it would give me much pleasure were I prepared to meet my debt to you.    Am still obliged to ask for an extension of time.    The mill is now in successful operation; when we run day and night, cut from thirty-five to forty thousand a week; we now run days only and cut twenty thousand a week.    The mill, as it now stands, cost four thousand dollars with all the fixtures.    Prospects look fair for doing a good business the present year.    I should be very glad to have you come out and see it operate, and if we can make an arrangement, will sell you one-half the mill, and run it in company.    I think it would be an object for you to do so.    Please let me know what you think of such an arrangement.    I feel confident there is money to be made in the lumber business properly conducted.

Accept for yourself and tender to your good lady my respects.                 H. I. HIGGINS."

"FLINT, April 9, 1852.

MR. T. DEUEL.

*Dear Sir:* In answer to yours would say, there is very

little money in circulation in this part of the country, in consequence of about one hundred of our enterprising men having left this county within the last four months for California, taking some thirty thousand dollars from the county. That together with our fire and· flood makes business extremely dull, which makes it very difficult to sell goods or any other property for money, or to collect debts. It has been a large damage to me inj purchasing your engine and fixtures.

I would not give to-day, if I wanted to purchase and you had to sell the same articles, six hundred dollars. I have sold the mill on a long credit of 1, 2, 3 and 4 years, at quite a loss. As soon as I can sell property or collect my debts, will arrange my matters with you : at what time am now unable to say: will do so as soon as possible.                    Respectfully, yours,

H. I. HIGGINS."

All of these letters were written after the boiler had proved a total failure. In his first letter, Higgins states the fact, and the injury his business sustained in consequence of it, as a reason for not being able to meet his bond and mortgage, and for soliciting an extension of the time of payment for another year on his paying the interest then due. He neither in this or either of his subse quent letters, apologizing for his delinquency and soliciting further time, so much as intimates a warranty or claim for damages, and yet nothing would have been more natural, in the circumstances in which he was placed, had he supposed himself entitled to any damages. The proper inference to be drawn from his letters, we think, is that he did not, when he purchased the engine and boiler, understand or rely on anything Deuel said as an undertaking or guaranty by him in regard to the boiler.

The decree dismissing the bill must be reversed, and the usual decree be entered for complainant for $775,26,

due on 27th March, 1861, with costs of both courts to be taxed. Defendants to have six months from the entry of decree to redeem in, and the proceedings to be remitted to the court below.

The other Justices concurred.