GEORGE H. RICHARDS v. EDWARD P. FULLER ET AL.

*Jury—Instructions.*

It is not error in a legal sense for a court to point out important testimony to a jury so as to lead it to an understanding of its bearings, and in doing so, comments upon the testimony may be necessary; but the jury should not be instructed as to the inferences of fact they are to draw from the evidence.

Juries ought not to be guided by the decisions or opinions of courts on questions of fact even in precisely analogous cases.

Error to Kent. Submitted April 9–10. Decided April 16.

ASSUMPSIT. Defendant brings error.

*Taggart & Wolcott* for plaintiff in error. Instructions that lead a jury to speculate on probabilities instead of deciding on the facts from the evidence are misleading

and erroneous. *Dodge v. Brown*, 22 Mich., 446; *Leslie v. Smith*, 32 Mich., 64; *Warner v. Crandall*, 65 Ill., 195; instructions as to the weight of testimony or as to what it tends to prove, are error. *Blackwood v. Brown*, 32 Mich., 104; *Ketchum v. Ebert*, 33 Wis., 611; *Firemen's Ins. Co. v. Walden*, 12 Johns., 519; *Fitzgerald v. Alexander*, 19 Wend., 402; *Andreas v. Ketcham*, 77 Ill., 377; *Greenville v. Henry*, 78 Ill., 150; *Wannack v. Mayor*, 53 Ga., 162.

*J. A. Fairfield* for defendant in error.

CAMPBELL, C. J.   Plaintiff in error was sued by defendants in error as endorsees of a promissory note given to Warren S. Hale and transferred by him to them.   The defense is that the consideration for the note was the sale of certain logs, which Hale warranted to hold out to a specified quantity and quality of each of the several kinds sold, including cherry, ash, basswood, walnut, butternut, maple, beech and elm; and that the lumber did not hold out as warranted, and that plaintiffs below were not such holders as to be discharged from that defense.

On the trial evidence was introduced tending to make out this defense, and showing that beyond the note Richards assumed payment of certain expenses of cutting the logs.   It was shown that there was a deficiency in quantity of several kinds of logs, and that some were worthless.   The deficiency shown was such as amounted to $1630.63.

There was also evidence of partial payments to Hale, and that the note was not transferred before due for valuable consideration without notice.   The recovery was for $1862.38, disregarding the special defense.

The lumber was all sawed by the latter part of July, 1874, and the shortage discovered after the shipping measurements completed in November, 1874.   Richards, who was a witness, stated on cross-examination that

between September, 1874, and April, 1875, and since the note became due, he had conversations with Fuller in which he promised to make payments or turn out property on the note. On re-direct examination he said he made these promises under advice of attorneys that he had no defense, but that afterwards he was advised his defense was good, and refused thereafter to pay, and that when he made some of the promises, supposing he had no remedy, he stated to Fuller that the logs fell short and he ought not to pay.

There was a conflict of testimony upon several important points.

The errors complained of all relate to the charges given by the court, which it is claimed were unauthorized and misleading.

The right of the defendant below to rely on the warranty was affirmed by this court reversing a judgment on a former trial, and the case is reported in 37 Mich., 161.

Upon the subject of the warranty, which the court held must be made out by Richards, the circuit judge went into a very extended discussion upon the probabilities, and the question whether it was likely Hale would have made a warranty under the circumstances. Among other things this languge was used: "The value of the logs on the average is claimed by the defendant to be about $10 I believe. If there was 470,-000 feet, if that was the understanding, then the value of the logs transferred would be about $4700. Hale gets $2500 for his claim, upon this theory, and it is a question for you whether Hale would be likely, in disposing of his interest in $4700 worth of logs for $2500 —whether he would be likely to assume a liability by way of warranty for the amount of the logs to the extent of $4700 when he was selling only his claim for $2500." He also commented on variances between Richards' testimony and the pleadings on the question of quality.

It is shown that Hale's interest in the property sold

for what it was estimated to be worth subject to other burdens, and if the testimony of warranty is true it was sold on the agreement as well as representation that the lumber would hold out as represented. As the balance of the interest in the property was subject to the claims of other parties, and as in paying $2500 to Hale, the real consideration was very much larger, and as in case of any serious deficiency Hale was getting just so much more than he would otherwise have received, it seems to us that this presentation to the jury was very misleading. It was all the more so by the statement of the average of ten dollars a thousand which would make out a very large apparent sacrifice for which we find no basis in the record. By the way in which the case was laid before the jury they might easily and naturally be led to imagine that Hale was incurring a liability of $4700 for $2500, when in fact, according to the defendant's testimony and claim (which the court could not properly ignore) his only liability was to make good so much of $2500 as the interest he sold for that sum fell short of what he represented it to be.

The court also put the case to the jury, under the subject of the consideration for the dealings between Hale and the plaintiffs below, upon a theory which authorized them to assume the note had been given by Hale to them as security for a debt of about $7000, due on his own account. There is no such proof reported in the record. His liability was only that of an endorser.

The judge also charged the jury that the promises of payment and payments made by Mr. Richards to the plaintiffs below without making any complaint of breach of warranty had "a strong tendency to show that there was no warranty made, and that if made there was no shortage." And in this connection he referred to the decision of this court in *Deuel v. Higgins*, 9 Mich., 223, as a precedent for a similar doctrine. He quoted the facts of that case and explained the inference drawn by this court from those facts, that no warranty existed there.

Richards swore that he did make·complaints, and the court in commenting upon his explanation referred to some facts shown on a former trial in regard to the advice of a certain attorney which so far as we can see were not before the jury as evidence. He then said that the jury should give the explanation such weight as under all the circumstances it deserves, "and if you are able to reconcile the negotiations which he made in reference to the payment of the note after he knew all about the shortage in the lumber, without making a complaint for breach of warranty, with the fact that the warranty was made in the first place, and that there was a shortage, of course you should recognize it."

While it is not error in a legal sense for a court to point out the important testimony so as to lead the jury to an understanding of its bearings, and while in doing this, more or less comments may be unavoidable and not improper, it seems to us that the charge in this case went far enough to intimate very strongly to the jury that there was either no warranty or no shortage, and that Richards had sworn falsely.

Moreover it was, we think, erroneous to attempt to instruct the jury—as was. done here—what inference should be drawn from the conduct of Richards, as to the non-existence of a warranty. When in connection with the strong language· of the judge himself .reference was made to a decision of this court upon a question of fact, the jury could not avoid the conclusion that they were expected to conform to it, and draw similar conclusions.

It is hardly necessary to say that decisions of fact can never be lawfully treated as precedents for juries to follow. Apart from the impossibility of putting them into the same position concerning the evidence with the court deciding the cause, it would be a violation of the fundamental principles of jury trials to enforce upon them or to allow them to receive in evidence the opinions of any one else, even upon facts precisely analogous.

They would violate their duty by abdicating their chief function of drawing their own conclusions from testimony, and it is error to permit them to act on such a notion.

We do not deem it necessary to refer to other exceptions to the charge, inasmuch as they all relate to such comments and instructions as are supposed to fall under the same mischief. Whatever view might be taken of isolated expressions mentioned or not mentioned, we think the charge as a whole does not remove the impression which appears to us derivable from the record that the judge was not sufficiently careful to abstain from such language as would be fairly construed by any jury as practically directing them in such a way as was not permissible.

Judgment reversed and new trial.

The other Justices concurred.