ATTORNEY GENERAL, *ex rel.* BEAN, *v.* SHOWLEY.

1. QUO WARRANTO—EQUALLY DIVIDED COURT—COURT COMMISSIONERS
   —APPOINTMENT—STATUTES.

   Information in nature of quo warranto is dismissed where court
   is equally divided as to whether power of appointment to fill
   vacancy in office of circuit court commissioner lay in the
   governor under the judicature act or in the probate judges,
   county clerk and prosecuting attorney under a subsequently
   enacted statute (Comp. Laws 1929, §§ 3369, 13718).

2. COSTS—PUBLIC QUESTION—QUO WARRANTO—TITLE TO OFFICE OF
   CIRCUIT COURT COMMISSIONER.

   No costs are allowed in quo warranto proceedings to determine
   title to office of circuit court commissioner, where a public
   question is involved.

Information in the nature of quo warranto by
Herbert J. Rushton, Attorney General, on the re-
lation of Sherman M. Bean, against Dale Showley
to test the title to the office of Genesee county cir-
cuit court commissioner. Submitted October 8,
1943. (Docket No. 62, Calendar No. 42,416.) In-
formation dismissed by an equally divided court
December 29, 1943.

*Herbert J. Rushton,* Attorney General, *Edmund
E. Shepherd,* Solicitor General, and *Daniel J.
O'Hara,* Assistant Attorney General, for plaintiff.

*Earl P. Trobert* and *Walter G. Krapohl,* for de-
fendant.

NORTH, J. This is a quo warranto proceeding instituted by the attorney general in behalf of the people of the State of Michigan on the relation of Sherman M. Bean. The resignation on January 25, 1943, of the former incumbent of the office of circuit court commissioner in Genesee county created a vacancy in that office. Immediately following such resignation the two probate judges of Genesee county, the county clerk and the prosecuting attorney assembled and, assuming to act under statutory authority (1 Comp. Laws 1929, § 3369 [Stat. Ann. § 6.715]), appointed defendant Dale Showley as circuit court commissioner; although the prosecuting attorney declined to take any part in such appointment because he was of the opinion that the appointive power was vested in the governor of the State. Following such appointment defendant qualified to fill the office, and since so doing he has held and exercised the office and still continues to do so.

Later the governor of the State appointed Sherman M. Bean to the office of circuit court commissioner in Genesee county, the secretary of State issued a commission accordingly, and the appointee duly qualified.

The meritorious question is whether the appointive power to fill a vacancy in the office of circuit court commissioner is under the above-cited statute in the named county officials or whether under 3 Comp. Laws 1929, § 13718 (Stat. Ann. § 27.241), such power is in the governor of the State. The statutory provision which purports to vest the appointive power in the governor is a reenactment of Act No. 204, § 27, Pub. Acts 1881. It was embodied in the 1915 judicature act and reads as follows:

"Whenever a vacancy shall occur, for any cause, in the office of circuit court commissioner of any

county, the governor may fill such vacancy by the appointment of a person eligible to such office.''

The conflicting and more recent statutory provision found in 1 Comp. Laws 1929, § 3369 (Stat. Ann. § 6.715), first above cited is Act No. 199, § 5, Pub. Acts 1923, which is entitled: ''An act to provide for the filling of vacancies in appointive and elective public offices.'' The pertinent portion of section 5 reads:

''When a vacancy shall occur in an elective or appointive county office, it shall be filled in the following manner:

''1. If the vacancy shall be in the office of county clerk or prosecuting attorney it shall be filled by appointment by the judge or judges of that judicial circuit. * * *

''2. If the vacancy shall be in any other county office, either elective or appointive, the judge of probate, the county clerk and the prosecuting attorney shall appoint some suitable person to fill such vacancy.''

While it is obvious that the statutory provision just above quoted applies only to county offices, we have no hesitancy in holding that the office of circuit court commissioner is a county office as contradistinguished from a State office. In *McClintock* v. *Laing*, 19 Mich. 300, it was held, quoting syllabus: ''The office of circuit court commissioner is a constitutional county office.'' There is at least a strong presumption that circuit court commissioners should be held to be county officers by such statutory provisions as that in the general election law wherein it is provided that at every general November election there shall be elected: ''in each county a sheriff, a clerk, a treasurer, a register of deeds, a prosecuting attorney, a circuit court commissioner or

commissioners, a drain commissioner, two coroners and a surveyor." See 1 Comp. Laws 1929, § 2997 (Stat. Ann. § 6.264). Further, the constitutional provision, while it does not use the words "circuit court commissioners" but clearly applies to those offices, provides for the election of such officers "in each county," thereby indicating quite conclusively that the office is a county office. The constitutional provision reads:

"The legislature may provide by law for the election of one or more persons in each organized county who may be vested with judicial powers not exceeding those of a judge of the circuit court at chambers." Const. 1908, art. 7, § 21.

On this appeal the controlling issue is this: Does the later act (1923) vesting the designated county officials with power to fill vacancies in some of the county offices *by implication* repeal the earlier (1915) statutory provision which vested in the governor the power to fill a vacancy in the office of circuit court commissioner? There has been no express repeal of the earlier act.

Our former decision in *Attorney General, ex rel. Whitcomb, v. Lau,* 256 Mich. 13, is in this same field of the law and controlling of decision in the instant case. In the *Lau Case* he had been appointed to fill a vacancy in the office of county treasurer by the designated county officials acting under the 1923 statute; and one A. C. Whitcomb was purportedly appointed by the board of supervisors to fill the same vacancy. The board of supervisors in making the appointment assumed to act under an earlier statute which vested the board with such power. This earlier statutory provision (1 Comp. Laws 1929, § 1264 [Stat. Ann. § 5.684]) was a part of the general statutes having to do with county affairs, duties of county officers, et cetera. In the *Lau Case*

we held that both this earlier statute and the statute of 1923 were *general* statutes, that the latter by necessary implication repealed the former, and that the appointment to fill the vacancy in the office of county treasurer by the county officials named in the 1923 statute was valid.

In testing the applicability of the foregoing ruling to the instant case it becomes necessary to consider whether each of the two conflicting statutory provisions is found in a *general* statute; or, as is asserted by plaintiff, is the statute under which his appointment was made a *special* enactment, and therefore not repealed by implication by the subsequently enacted general statutory provision, as was held in *Attorney General, ex rel. Owen,* v. *Joyce,* 233 Mich. 619.

As hereinbefore noted, the provision under which plaintiff's purported appointment was made (3 Comp. Laws 1929, § 13718 [Stat. Ann. § 27.241]) is found in the 1915 judicature act. Surely this act, which has to do in the most general manner with the judicial branch of our State government, must be held to be a general act. The section under which plaintiff asserts the validity of his appointment is a single section embodied in this general act, just the same as in the *Lau Case* wherein the appointment of the relator Whitcomb was sought to be made by virtue of the provisions in a single section embodied in the general statute having to do with county affairs. So in the instant case it must be held, as it was held in the *Lau Case,* that the more recent of the two general statutes repeals by implication the conflicting provisions of the earlier statute. It follows that the appointment of the defendant made by the designated county officials. under 1 Comp. Laws 1929, § 3369 (Stat. Ann. § 6.715),

was valid, and he is in lawful possession of the office of circuit court commissioner of Genesee county.

Because of our holding herein that each of the two statutes involved are *general* statutes, it is obvious that our decision in *Attorney General, ex rel. Owen, v. Joyce, supra,* is not in point in the instant case. Mr. Justice SHARPE disagrees with the foregoing statement. Instead, while he does not expressly so state, he evidently is of the opinion that the instant case falls within the reasoning of the *Owen Case.* By quoting from that case he notes the reasons why the statute there involved was held to be so-called "special" or specific legislation governing an isolated single subject matter. Then by pointing out some parallels between the highway statute involved in the *Owen Case* and the judicature act involved in the instant case, Justice SHARPE seems to have arrived at the conclusion that the judicature act can be classified as a special or specific act, rather than as general legislation. I am not in accord with this conclusion. Instead the judicature act is about as good an example of a broad and general act as can be found in the Michigan statutes. Rather than pertaining exclusively or mainly to the power of the governor to fill by appointment vacancies in judicial offices, as Justice SHARPE seems to contend, the general scope of the judicature act and the various aspects of statutory law included therein are plainly disclosed by the title to the act, which we quote:

"An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this State; the powers and duties of such courts, and of the judges and other officers thereof; the forms of civil actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure

in civil actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act.''

If, as I hold, each of the two conflicting statutes involved in the instant appeal is a *general* statute, there being an irreconcilable conflict between the two, the well-settled rule of statutory construction necessitates holding that the later of the two enactments must prevail. To hold otherwise involves a rather uncomplimentary assumption that the members of the 1923 legislature did not know of the existing statutory law which controlled the very subject on which they were then legislating. And further, by holding that the 1915 act controls instead of the 1923 act, one must wholly ignore, as to circuit court commissioners, the provision in section 5 of the 1923 act which reads in substance as follows: ''If the vacancy shall be *in any other county office* (other than county clerk or prosecuting attorney), either elective or appointive, the judge of probate, the county clerk and the prosecuting attorney'' shall fill the vacancy. But the italicized phrase clearly includes the office of circuit court commissioner, as much as that of county treasurer, register of deeds or sheriff.

It is difficult to conceive of the legislature choosing plainer words than those just above quoted. And reference to preceding provisions in the 1923 act discloses that the legislature when passing it was mindful of the necessity, because of constitutional provisions, of leaving the appointive power in the governor to fill vacancies *in courts of record.* With that in mind section 4 of the 1923 act provided: ''Whenever a vacancy shall occur in the office of a judge of a court of record, the governor shall fill such vacancy.'' (As amended, see Act No. 236, Public

Acts 1931 [Comp. Laws Supp. 1940, § 3368, Stat. Ann. § 6.714]). Mr. Justice SHARPE says: "In my opinion, the act (1915) which gives the governor power of appointment is a part of the law governing matters pertaining to the *administration of justice.*" Obviously such was and still is the case as to *courts of record.* The legislature specifically so restricted the appointing power of the governor in the 1923 act. Obviously the legislature could not deprive the governor of the power of appointment in cases of vacancy in the office of a judge of a court of record, because the Constitution vests that power in the governor. Const. (1908), art. 7, § 20. But the legislature does have the power to designate the appointing authority to fill vacancies in the office of circuit court commissioner; and it clearly exercised that power in the 1923 act. It is a fair inference that the change in the statutory provision as to filling a vacancy in the office of circuit court commissioner was prompted by a desire on the part of the legislature to vest the appointive power in the local authorities of the county wherein the vacancy existed, rather than to leave it in the hands of the governor who, as a State officer, might be less well advised as to the qualifications of a prospective appointee.

At most a circuit court commissioner is only a quasi-judicial officer, and the circuit court commissioner's court is not a court of record. It seems quite impossible that the legislature did not mean what it plainly said in the 1923 act. It therein said: "If the vacancy *shall be in any other county office*" except that of county clerk or prosecuting attorney the vacancy shall be filled by appointment made by the designated county officers. This provision is irreconcilably in conflict with the 1915 legislative act which placed such appointing power as to circuit court commissioners in the governor. The two are

inconsistent and cannot stand together. The later act of the legislature should be held to be controlling; notwithstanding the draftsman of this 1923 act may have overlooked the formality of including therein a general repealing clause as to prior inconsistent statutory provisions.

Other questions than those hereinbefore considered which the respective parties have presented on this appeal need not be considered because they do not have a decisive bearing upon decision of the controlling issue. Relator's information in the nature of quo warranto is dismissed; but because a somewhat perplexing and public question is involved no costs will be awarded.

CHANDLER, STARR, and BUTZEL, JJ., concurred with NORTH, J.

SHARPE, J. I am unable to subscribe to the application of the principle of repeal by implication as made by Mr. Justice NORTH. His opinion is based upon the theory that the judicature act of 1915 (Act No. 314, Pub. Acts 1915) is a general law and therefore section 117 of chapter 2 thereof, being 3 Comp. Laws 1929, § 13718 (Stat. Ann. § 27.241), is repealed by Act No. 199, § 5, Pub. Acts 1923 (1 Comp. Laws 1929, § 3369 [Stat. Ann. § 6.715]).

Section 13718, 3 Comp. Laws 1929, provides that when a vacancy occurs in the office of a circuit court commissioner, the vacancy shall be filled by appointment of the governor, while 1 Comp. Laws 1929, § 3369, provides for the manner of filling vacancies in county offices.

In *Attorney General, ex rel. Owen, v. Joyce,* 233 Mich. 619, we announced certain rules on repeal by implication. We there said:

"The theory of the principle of repeals by implication is that the latest expression of the legis-

lative will should control. The question therefore is one of legislative intention. When the intention of the legislature can be ascertained, it is the duty of the courts to give it force and effect.

"But,

"'The presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary.' 25 R. C. L. pp. 918, 919.

"'Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction.' 25 R. C. L. p. 918.

"'The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.' *Michigan Telephone Co.* v. *City of Benton Harbor,* 121 Mich. 512 (47 L. R. A. 104).''

Mr. Justice NORTH relies upon *Attorney General, ex rel. Whitcomb,* v. *Lau,* 256 Mich. 13, as controlling of the principal issue involved in the case at bar. The *Lau Case* held that Act No. 199, Pub. Acts 1923, did repeal by implication the prior act providing for filling vacancies in the office of county treasurer. Justice NORTH's opinion in the case at bar classifies the provisions in the judicature act in the same category with the "general act" involved in the *Lau Case* and in a different category from the "special legislation" (State highway law) involved in the *Joyce Case.*

In the *Joyce Case, supra,* we said:

"The act which gave the board of supervisors the power of appointment is a part of the general highway law of the State. It is found in section 8 of Act No. 283, Pub. Acts 1909. This act contains a complete and comprehensive system of laws relating to highways. It touches no other subject of legislation. It is an expression of the legislative will in establishing a system under which the State could more effectively carry on an intensive

program for the building of roads. In furtherance of this policy, the act created county road commissioners to be appointed by the supervisors in the first instance, and thereafter whenever vacancies occurred.

. "Can this special legislation be repealed by inference alone, by the subsequent enactment of a statute that does not pertain to highways, and contains no express language indicating its intention to repeal any part of the highway law?"

In my opinion, the act which gives the governor power of appointment is a part of the law governing matters pertaining to the administration of justice. The act contains a complete and comprehensive system of laws relating to courts. It touches no other subject of legislation. It is an expression of the legislative will in establishing a system under which the State can more effectively administer justice. The power to fill vacancies in the office of circuit court commissioner by the governor was retained in the act as a part of its general plan for the administration of justice.

Repeals by implication depend upon the intent of the law-making body and as was said by Mr. Justice NORTH in the *Lau Case, supra:* "In interpreting and construing statutes, the primary rule is to ascertain and give effect to the intention of the legislature." The appointment of circuit court commissioners by the governor to fill vacancies has been the law in Michigan for many years. If the legislature intended to repeal such an important law, it is reasonable to suppose that its intention to do so would have been expressly stated and not left to inference and conjecture. It follows that the action of the probate judges and county clerk of Genesee county in appointing defendant Showley to the vacancy in the office of circuit court commissioner of Gen-

esee county was illegal and as he is illegally holding the office, judgment of ouster should be entered. No costs, as a public question is involved.

Boyles, C. J., and Wiest and Bushnell, JJ., concurred with Sharpe, J.