FICANO v LUCAS

Docket No. 70157. Submitted June 15, 1983, at Detroit.—Decided
    December 20, 1983.

> In 1981, Wayne County voters adopted a new county charter to
> take effect on January 1, 1983. The charter provided for an
> elected County Executive to assume general supervision of
> many of the executive functions of county government. William
> Lucas, Wayne County Sheriff, was elected to be the first County
> Executive. In order to assume the positon of County Executive,
> Lucas would have to resign as sheriff. He did so. On December
> 22, 1982, pursuant to statute, the county clerk, the county
> prosecutor and the chief judge of Wayne Probate Court ap-
> pointed Robert Ficano to fill the vacancy which would exist
> when Lucas became County Executive. On January 1, 1983,
> Lucas, as County Executive, appointed his undersheriff, Loren
> Pittman, to fill the vacancy in the office of sheriff. Lucas cited
> the new county charter as authority for the appointment. Four
> days later, the Wayne County Board of Commissioners voted to
> approve the appointment of Pittman as sheriff. Ficano filed suit
> against Lucas and Pittman in Wayne Circuit Court seeking a
> declaratory judgment removing Pittman and installing himself
> as sheriff. The court, Paul S. Teranes, J., granted summary
> judgment in favor of Ficano, finding that certain provisions of
> the enabling legislation, the charter counties act, prohibit a
> county charter from giving the County Executive authority to
> fill vacancies which may arise in the office of an elected county
> official, such as the office of sheriff. The court further held that
> the new county charter confers no authority upon the County
> Executive to fill a vacancy in the sheriff's office because such an
> appointment is not permitted by law. The court concluded by

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 110, 235, 254.

    70 Am Jur 2d, Sheriffs, Police, and Constables § 6.

[2] 73 Am Jur 2d, Statutes §§ 211, 212.

[3] 5 Am Jur 2d, Appeal and Error § 546.

[4] 73 Am Jur 2d, Statutes § 397.

[5] 63 Am Jur 2d, Public Officers and Employees § 98.

holding that the appointment of Ficano as sheriff was valid. Defendants appeal. *Held:*

1. Defendants' contention that, under the provisions of the charter counties act, a charter county may confer upon its County Executive the power to fill vacancies in elective offices such as that of the county sheriff is rejected. Furthermore, even if a provision of the charter counties act which arguably grants such provision could be identified, defendants failed to preserve the issue for appeal.

2. Defendants' contention that the charter counties act grants charter counties implied or general permission to provide for County Executive appointment to fill elective office vacancies is also rejected. Such an appointment procedure is not permitted either expressly or impliedly under the constitution and laws of Michigan.

3. Defendants' argument that the statute under which plaintiff was appointed sheriff is unconstitutional as a violation of the separation of powers doctrine was neither timely raised in the trial court nor preserved for appeal.

4. Defendants' contention that the statute under which Ficano was appointed has been repealed by the charter counties act is without merit. There is no basis for any conclusion that the statute has been repealed.

5. Defendants' contention that Ficano's appointment was invalid because it was premature is rejected. The Supreme Court has repeatedly upheld as valid prospective appointments or appointments to positions not yet vacant but soon to be vacated.

Affirmed.

1. COUNTIES — PUBLIC OFFICERS — CHARTER COUNTIES — VACANCIES.

The charter counties act does not confer upon a charter county the authority to grant to its County Executive the power to fill vacancies in elective offices such as that of the county sheriff (MCL 45.511a[8]; MSA 5.302[11a][8]).

2. STATUTES — JUDICIAL CONSTRUCTION.

Rules of statutory construction provide that where some items are included by specific mention other items must be treated as having been intentionally excluded.

3. APPEAL — NEW THEORIES ON APPEAL.

Parties may not shift ground and come up with new theories on appeal after being unsuccessful on the theories presented in the trial court.

4. STATUTES — REPEAL BY IMPLICATION.

There is a presumption against any intention to repeal a statute by enactment of another statute where express terms are not used, therefore, an intention to repeal a statute by implication must be expressed in particularly clear terms; repeals by implication are not favored so long as any other reasonable construction can be pointed to.

5. COUNTIES — SHERIFFS AND CONSTABLES — VACANCIES — PROSPECTIVE APPOINTMENTS.

A plaintiff's appointment as county sheriff was not invalid because premature where the present sheriff's resignation would not be effective for approximately ten days; prospective appointments or appointments to positions not yet vacant but soon to be vacated may be valid.

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan, James J. Walsh* and *Charles N. Raimi*), for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *David Olmstead, Larry J. Saylor* and *Cynthia Faulhaber*), for William Lucas.

*Goodman, Eden, Millender & Bedrosian* (by *George J. Bedrosian*), for Loren Pittman.

Amicus Curiae:

*George E. Ward,* for George E. Ward, former president, Wayne County Charter Commission.

Before: BRONSON, P.J., and T. M. BURNS and H. E. DEMING,* JJ.

PER CURIAM. Defendants appeal the trial court's order requiring defendant Pittman to vacate the office of Wayne County Sheriff and ruling that plaintiff had been properly appointed sheriff. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The operative facts are undisputed. In 1981, Wayne County voters adopted a new county charter, pursuant to enabling legislation known as the charter counties act, MCL 45.501 *et seq.;* MSA 5.302(1) *et seq.* The charter was to take effect on January 1, 1983. It provided for an elected County Executive (CEO) to assume general supervision of many of the executive functions of county government. In 1982, defendant Lucas was elected as the county's first CEO. At the time, Lucas was serving as county sheriff, an office which he would be required to resign upon commencement of his term as the CEO on January 1, 1983. Under the new charter, as under the former system of county government, the sheriff's office is elective.

On December 22, 1982, pursuant to 1923 PA 199, MCL 168.209; MSA 6.1209, the county clerk, the county prosecutor and the chief judge of Wayne County Probate Court appointed plaintiff Robert Ficano to fill the vacancy which would exist in the county sheriff's office as of January 1, 1983, when defendant Lucas was scheduled to become the CEO.

On January 1, 1983, defendant Lucas, acting in his new found capacity as CEO, appointed his undersheriff, defendant Loren Pittman, to fill the vacancy in the office of sheriff. Defendant Lucas cited section 2.212 of the new county charter as authority for this appointment. On January 5, 1983, the Wayne County Board of Commissioners, acting on the basis of the above-cited charter provision, voted to approve the appointment of Pittman as sheriff.

Plaintiff brought this action for declaratory judgment, seeking an order removing Pittman and installing plaintiff as county sheriff. Plaintiff and each defendant brought motions for summary

judgment, and the trial court ruled in favor of plaintiff. Specifically, the court found that certain provisions of the enabling legislation, MCL 45.514(1)(g); MSA 5.302(14)(1)(g) and MCL 45.511a (8)(e); MSA 5.302(11a)(8)(e), prohibit a county charter from giving the CEO authority to fill vacancies which may arise in the office of an elected county official, such as the office of sheriff.

The court went on to hold that section 2.212 of the new charter confers no authority upon the CEO to fill a vacancy in the sheriff's office because such an appointment is not "permitted by law". The court concluded its opinion by holding that the appointment of plaintiff as sheriff pursuant to MCL 168.209; MSA 6.1209 was valid because (1) the appointment was not premature even though made several days before January 1, 1983, when defendant Lucas vacated the office, and (2) there was no genuine issue of material fact as to whether plaintiff was "suitable" for the position within the meaning of MCL 168.209; MSA 6.1209.

On appeal, defendants once more urge that, despite the language of the above-cited provisions contained in the enabling legislation, a charter county may confer upon its CEO the power to fill vacancies in elective offices such as that of the county sheriff. We disagree. MCL 45.511a(8); MSA 5.302(11a)(8) provides:

"[T]he duties and responsibilities of the elected county executive * * * at a minimum, shall include the duty and responsibility to:

"(a) Supervise, direct and control the functions of all departments of the county *except those headed by elected officials.*

*       *       *

"(e) *Except elected officials,* appoint, supervise, and at

pleasure remove heads of departments and all boards and commissions." (Emphasis added.)

We believe that the foregoing language of the charter's enabling legislation, *supra,* operates to limit the appointment and removal power of a CEO to nonelective offices.[1]

This construction of MCL 45.511a(8); MSA 5.302(11a)(8) is consistent with sound public policy. This follows because defendants' contrary interpretation could have potentially disastrous consequences. If the phrase "except elected officials" is ineffective to bar appointments to elective offices, then by the terms of that section it is equally inapplicable to a CEO's action to "supervise, and at pleasure remove" holders of such offices. Applying this reasoning, any county CEO would be free to render the sheriff an employee at will, subject to summary removal as political considerations may dictate. The sheriff would no longer have the status and dignity of an independent constitutional officer. With the sheriff and his department thus left under the direct control of the county CEO, there would be a significant potential for undue influence over that department. By way of example, the sheriff has a statutory duty to inves-

[1] Defendants argue that the phrase "[e]xcept elected officials" in MCL 45.511a(8)(e) is inapplicable, because plaintiff Ficano was not actually "elected" to the office of sheriff. We believe that defendants read the phrase "elected official" too literally and in a manner which would render meaningless that section's exception for "elected officials". The subject of this section is the appointment as well as removal of certain officials. The only time that a holder of elective office can be appointed to such an office is when a vacancy occurs. Thus, if the exception for "elected officials" was not intended specifically to prohibit appointments to fill vacancies in elective offices, that exception has no meaning at all. Defendants' interpretation would violate fundamental principles of statutory construction, as set forth in *Chrysler Corp v Washington,* 52 Mich App 229, 237; 217 NW2d 66 (1974): "Every word, phrase, clause, and sentence of the provision to be construed must be given force and effect and no word, phrase, or clause shall be rendered nugatory."

tigate reports of election tampering, MCL 168.941; MSA 6.1941. If some future inquiry involves a county CEO, the latter's control over the sheriff's department could well have the effect of chilling the department's investigation of the inquiry. Defendants' construction leaves open the possibility of numerous, even more disturbing examples of CEO action which could severely compromise the integrity of Wayne County's law enforcement system.[2]

MCL 45.514(1)(g); MSA 5.302(14)(1)(g) provides:

"A county charter adopted under this act shall provide for all of the following:

* * *

"(g). That the *general statutes* and local acts of this state regarding counties and county officers shall continue in effect *except to the extent that this act permits the charter to provide otherwise, if the charter does in fact provide otherwise.*" (Emphasis added.)

In the present case, general statutes such as MCL 168.209; MSA 6.1209 govern appointment of county officials, except to the extent that the enabling legislation "permits" the charter to provide otherwise.

We do not believe that the enabling legislation permits the charter to provide for CEO appointment of officials in elective offices. First, nowhere

---

[2] We note that in oral argument, defendants' attorney suggested that under defendants' proposed reading of the statute, the CEO's appointment and removal power would not only extend to the county sheriff, but also to such elective offices as that of the county prosecutor. The specter of a county CEO removing the county prosecutor at will, presumably whenever political considerations dictate such action, is particularly abhorrent to this Court, and by itself provides a powerful argument for rejecting defendants' proposed construction of the statute. By acknowledging that this hypothetical follows from their construction of the statute, defendants have effectively admitted that their construction would confer almost limitless power upon the CEO.

in the enabling legislation is there any *express* provision allowing for such an appointment procedure. On the contrary, the statute contains a section listing specific topics upon which a county charter commission may make its own local provisions, MCL 45.515; MSA 5.302(15). The appointment procedure advocated by defendants is not enumerated therein. Under established rules of statutory construction, where some items are included by specific mention, other items must be treated as having been intentionally excluded, *Van Sweden v Van Sweden,* 250 Mich 238, 241; 230 NW 191 (1930). In the present case, the Legislature's complete failure to mention the topic of vacancy appointments supports the conclusion that the Legislature did not intend to grant permission to a charter county to provide for CEO appointment of sheriff's office vacancies.

Even if we could identify a provision which arguably grants such permission, we find no occasion to review any such provision. This follows because defendants failed to preserve the issue for appeal. At no time during the trial court proceedings did defendants suggest that any provision in the charter counties act granted express permission, and in fact, at one point, defendants agreed with plaintiff that the legislation contained no express permission. Defendants "may not shift ground on appeal and come up with new theories here after being unsuccessful on the one presented in the trial court", *Three Lakes Ass'n v Whiting,* 75 Mich App 564, 581; 255 NW2d 686 (1977).[3]

---

[3] Among the contentions not preserved for appeal is defendants' belated argument that MCL 45.514(1)(d); MSA 5.302(14)(1)(d) confers express permission to provide for continuation or transfer of the powers of all "boards" and "commissions". Even if this argument had been raised below, it would have to be dismissed as meritless. Defendants ask this Court to treat the prosecutor, county clerk and probate judge who appointed plaintiff pursuant to MCL 168.209; MSA 6.1209 as a

Defendants next insist that the enabling legislation grants charter counties "implied" or "general" permission to provide for CEO appointment to fill elective office vacancies. Defendants suggest that the concept of home rule underlies Const 1963, art 7, § 34, which, according to defendants, must be regarded as the "paramount guide" for construing provisions of the charter enabling legislation. Although we are mindful of the principle of liberal construction embraced in Const 1963, art 7, § 34, we cannot overlook the clear limitations upon county charters set forth under Const 1963, art 7, § 2:

"Any county may frame, adopt, amend or repeal a county charter *in a manner and with powers and limitations to be provided by general law.* * * * The *law may permit* the organization of county government in a form different from that set forth in this constitution * * *. *Subject to law,* a county charter may authorize the county through its regularly constituted authority to adopt resolutions and ordinances relating to its concerns." (Emphasis added.)

Defendants' assertions to the contrary, the charter enabling legislation was actually enacted pursuant to this section, not Const 1963, art 7, § 34.

"board", whose powers could be transferred to the CEO under the section. However, that section does not refer to those three officials in any collective sense, and certainly does not categorize them as a "board", "commission" or any other "department" which could conceivably fall within the ambit of MCL 45.514(d); MSA 5.302(14)(d). Moreover, even if the section did purport to provide for the transfer of individual officers' powers, it would not be effective to transfer power from the probate court judge who participates in MCL 168.209; MSA 6.2109's appointment process. This follows because delegates to the Constitutional Convention made clear their intention not to affect the local judiciary when they approved Const 1963, art 7, § 2, the section under which the enabling legislation was enacted. In short, MCL 45.514(d); MSA 5.302(14)(d) does not confer any express permission upon a charter county to replace the established procedure with defendants' proposed procedure.

Accordingly, it is this section, and not Const 1963, art 7, § 34, which must serve as the "paramount guide" in construing that enabling legislation. As indicated by the emphasis in the above section, the framers of the constitution specifically sought to preserve legislative restraints upon the scope of, and powers conferred by, county charters. The framers' intention to keep county charters subject to general laws is manifested by the Convention Comment, as follows:

"The charter commission *is limited by legislative action* in the structural changes it may propose. * * * [T]he charter county need not have specific permission from the legislature to perform local functions * * * such activities may be *limited* only *by legislative enactment.*" 2 Michigan Compiled Laws Annotated, p 345.

It is apparent that even if the enabling legislation need not give charter counties "specific permission" to adopt the appointment procedure advocated by defendants, the county's freedom to adopt such a procedure (or any other "local function", for that matter) remains limited by, and subject to, legislative enactments. In this case, based upon its constitutional authority to prescribe limits upon county charters, as well as its constitutional authority to prescribe methods for filling vacancies in public offices, Const 1963, art 4, § 38, the Legislature has determined that a charter county may not authorize its CEO to fill vacancies in election county offices. The appointment procedure remains governed by general law, MCL 168.209; MSA 6.1209, despite defendants' references to "home rule".[4] The courts of this state have long recog-

---

[4] We acknowledge that the enabling legislation does use the term "home rule" at various points, but we believe that the extensive limitations imposed upon charter counties are inconsistent with any notion of pure county "home rule". See for example MCL 45.511a(1);

nized that the constitutional grant of "home rule" to certain municipalities remains "subject to the constitution and law", *Oppenhuizen v City of Zeeland,* 101 Mich App 40; 300 NW2d 445 (1980). See also *Richards v City of Pontiac,* 305 Mich 666; 9 NW2d 885 (1943).[5]

Even if the concept of "home rule" were relevant and applicable here, defendants fail to explain how the application of MCL 168.209; MSA 6.1209 would contravene that concept. That statute specifically authorizes appointment of elective-office vacancies by three officials, each of whom functions exclusively locally, in Wayne County. The appointment procedure established by that statute is just as sensitive to local concerns as would be any procedure by which the county CEO fills the vacancy. Framed in terms of "home rule" and "local concerns", the entire controversy in this appeal boils down to whether three local officials act to fill an elective office vacancy, MCL 168.209; MSA 6.1209, on the one hand, or a single local official, the county CEO, takes that action under defendants' proposed reading of the charter's section 2.212. If anything, the procedure established under MCL 168.209; MSA 6.1209 reflects a greater

MSA 5.302(11a)(1); MCL 45.514; MSA 5.302(14), setting forth a detailed list of minimum requirements which a county charter must meet. The enabling legislation does not, in our opinion, authorize anything resembling a genuine "home rule" system of county government, and defendants' reliance upon "home rule" concepts is at best strained, if not totally misplaced.

[5] See also *Arrowhead Development Co v Livingston County Road Comm,* 413 Mich 505; 322 NW2d 702 (1982); *Inch Memorials v City of Pontiac,* 93 Mich App 532, 535-537; 286 NW2d 903 (1979), *lv den* 408 Mich 919 (1980), which reveal that "home rule" municipalities are recognized to have only those powers which are explicitly granted or fairly implied from specific constitutional or statutory language. In this case, as noted above, the only statutory language which specifically addresses the issue at hand—appointment of vacancies in elective offices—expresses a *limitation* upon the local government's exercise of power, MCL 45.511a(8); MSA 5.302(11a)(8).

sensitivity to the concerns of local citizens—under that procedure the action is taken by three elected officials, presumably representing a broader and more balanced spectrum of political viewpoints than those of any single CEO.

The case cited by defendants, *People v Hurlbut,* 24 Mich 44 (1871), is distinguishable from the present one; there, the state Legislature was attempting to *directly* appoint local officials. Here, by contrast, the appointment process remains exclusively in the hands of *local* officials, who merely acted *pursuant to* a statute of statewide application. The present case more closely resembles *Hafeli v Wayne County Clerk,* 302 Mich 472; 4 NW2d 841 (1942), where the Supreme Court flatly rejected a claim that an appointment made pursuant to MCL 168.209; MSA 6.1209 constituted an impermissible interference by the state Legislature into local affairs. The Court observed:

"In the present case, plaintiff was not appointed by a State official, having no immediate concern with local county affairs, but was appointed by the judge of probate, county clerk, and prosecuting attorney of Wayne County. The present statute does not interfere with but, on the contrary, is in accord with 'the principle of local self-government.' " 302 Mich 472, 477.

The foregoing discussion of Const 1963, art 7, § 2, home rule, and of legislative restraints upon charter counties leads us to conclude that Wayne County lacked authority under the enabling legislation to adopt an appointment procedure which would supersede that established by MCL 168.209; MSA 6.1209. Given this statutory limitation upon charter counties, we decline to recognize any "implied" permission to adopt an alternative appointment procedure.

We also note that even if the enabling legisla-
tion had granted charter counties some form of
"implied" permission to adopt a new procedure for
filling vacancies—and we emphasize our finding
that no such permission has been granted—the
charter can and should be read not to have
adopted such a procedure. Section 2.212 of the
charter, upon which defendants base their entire
argument, allows the CEO to appoint a person to
fill a vacancy only if the appointment is "permit-
ted by law". Given our conclusion that such an
appointment procedure is not "permitted" either
expressly or impliedly under the constitution and
laws of this state, it follows that the charter did
not even purport to vest the CEO with the ap-
pointment power in question. The charter should
be read as having authorized CEO appointment
only as permitted by the enabling legislation, *i.e.,*
only in those vacancies which take place in none-
lective offices. MCL 45.511a(8)(e); MSA
5.302(11a)(8)(e).

Defendants' remaining contentions on appeal
provide no basis for reversal. Defendants' argu-
ment that MCL 168.209; MSA 6.1209 is unconstitu-
tional as a violation of the separation of powers
doctrine was not raised below by either party and
was not raised on appeal by any party to this
action, save amicus. Even though defendant Pitt-
man subsequently reiterated amicus's argument as
to this issue, we find that the issue was neither
timely raised nor preserved for appeal in the trial
court. Accordingly, we decline to review this issue.
*Buxton v Alexander,* 69 Mich App 507; 245 NW2d
111 (1976); *Hernandez v Consumers Power Co,* 51
Mich App 288; 214 NW2d 846 (1974); *Norton
Shores v Carr,* 81 Mich App 715; 265 NW2d 802

(1978). See also *Three Lakes Ass'n v Whiting, supra.*[6]

We find no merit in defendants' alternative contention that MCL 168.209; MSA 6.1209 has been repealed by the charter county enabling legislation. Even if, as defendants urge, the enabling legislation did supersede MCL 168.209; MSA 6.1209 on the subject of filling vacancies in elective offices, there is no basis for any conclusion that the statute has been repealed. The presumption is always against any intention to repeal where express terms are not used, and it has long been held that repeals by implication are not favored so long as the Court can point to any other reasonable construction, *Attorney General ex rel Owen v Joyce,* 233 Mich 619, 621; 207 NW 863 (1926). An intention to repeal by implication must be expressed in particularly clear terms, *Joyce, supra; Rocco v Dep't of Mental Health,* 114 Mich App 792; 319 NW2d 674 (1982). We find no such clear manifestation of an intention to repeal MCL 168.209; MSA 6.1209. The Supreme Court has had little difficulty in reconciling MCL 168.209; MSA

---

[6] Contributing to our disinclination to review this constitutional challenge is the Supreme Court's admonition in *Dearborn Twp v Dearborn Twp Clerk,* 334 Mich 673, 681; 55 NW2d 201 (1952), that courts' "reluctance to overturn an action of the legislature increases when we are confronted by an enactment of such ancient vintage". The Court was willing to note this reluctance, even though that case involved a much clearer separation of powers violation (four out of seven members of a township's governing board were members of the judiciary). Contrast the present case, where at most, only one of the three persons who act pursuant to MCL 168.209; MSA 6.1209—the probate judge—represents a non-executive branch of government. Although our refusal to review this issue on the merits causes us to limit our comments, we do question the viability of defendants' theory given the numerous occasions upon which the Supreme Court has rejected similar challenges to the validity or constitutionality of MCL 168.209; MSA 6.1209 and its predecessors. *Hafeli, supra; Attorney General ex rel Bean v Showley,* 307 Mich 690; 12 NW2d 439 (1943); *Attorney General ex rel Baird v Johnson,* 294 Mich 250; 293 NW 545 (1940); *Attorney General ex rel Finley v Fawcett,* 263 Mich 288; 248 NW 624 (1933).

6.1209 with new enactments which create exceptions under special circumstances. *Joyce, supra; Attorney General ex rel Finley v Fawcett,* 263 Mich 288; 248 NW 624 (1933). Thus, assuming *arguendo* that the charter county enabling legislation would have created an exception to the established appointment procedure, the statute still has not been repealed, either by the enactment of that legislation or the charter itself.

Defendants misplace reliance upon *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969). There, the new enactment in question directly amended the one which was supposedly repealed. The Court relied upon the principle that when a statute is directly amended, the former version of the statute ceases to exist entirely and is replaced, if at all, by the new language. This principle has no application in a case such as the present one, where the new enactment in question (charter county enabling legislation) does not purport to directly amend the established statute, MCL 168.209; MSA 6.1209, but is instead completely independent. Under the circumstances of the present case, there can be no repeal unless the two statutes are positively repugnant to one another, *Ballog, supra,* pp 529-530, 537-538. We conclude that MCL 168.209; MSA 6.1209 remains in effect.

Defendants' final contention is that the appointment of plaintiff to the sheriff's office was invalid because it was premature. According to defendants, there was only a prospective vacancy, and no actual vacancy, until January 1, 1983, when defendant Lucas left that office to become the CEO. Unfortunately for defendants, the Supreme Court has repeatedly upheld as valid prospective appointments or appointments to positions not yet

vacant but soon to be vacated. *People ex rel Andrews v Lord,* 9 Mich 226 (1861); *Attorney General ex rel Lumley v Schulz,* 262 Mich 271; 247 NW 178 (1933). See also *Lord v Genesee Circuit Judge,* 51 Mich App 10; 214 NW2d 321 (1973), where the validity of prospective appointment by former Governor Milliken was neither challenged as premature nor disapproved by the Court.

For all of the foregoing reasons, we conclude that the trial court's orders must be affirmed.

Affirmed. No costs are awarded, as this case involves issues of public significance.