## LINE v. BOARD OF ELECTION CANVASSERS OF MENOMINEE COUNTY.

1. ELECTIONS—PRIMARY ELECTIONS—CHARACTER AS ELECTIONS.
   A primary election is not an election to public office, but is merely the selection of candidates for office by the members of a political party in a manner having the form of an election.

2. SAME—VOTING MACHINES—USE—STATUTE—CONSTRUCTION.
   Act No. 287, Pub. Acts 1907, authorizing the use of voting machines at "all State, county, city, village, and township elections," refers to elections at which persons are given public offices by a plurality of the votes of all the electors voting thereat, and does not authorize the use of voting machines at primary elections.

3. SAME—PRIMARY ELECTIONS—VOTING MACHINES—USE—STATUTORY PROVISIONS.
   Since the primary election law of 1907 (Act No. 4, Ex. Sess.

1907) does not expressly provide for the use of voting machines at the primary elections therein provided, and adopts only such provisions of the general election law as are not inconsistent therewith, and voting machines cannot be adapted to the law and used to carry out all its mandatory provisions, the use of machines is not permissible at such primaries.

4. SAME — CANVASS OF VOTES — RECOUNT —VOTING MACHINES — DUTY OF RECOUNTING BOARD.

Where, on petition for a recount of the votes cast at a county primary election, held under Act No. 4, Ex. Sess. 1907, it appears that in one precinct the votes were cast by means of voting machines, in consequence of which the inspectors are unable to send up the ballot boxes as required by law, the returns from that precinct must be rejected, there having been no legal primary held there, and the recount decided upon the remaining ballots.

Mandamus by Charles Line to compel the board of election canvassers of Menominee county to reconvene and recount the ballots cast in said county. Submitted September 29, 1908. ( Calendar No. 23,062.) Writ granted October 1, 1908.

*Charles Line*, in pro. per.

*John E. Bird*, Attorney General (*Thomas Ambrose Lawler*, of counsel), for the State.

*Sawyer & Waite*, for respondent.

McALVAY, J.   At the general primary election held September 1, 1908, relator was one of the three candidates for nomination for the office of prosecuting attorney by the republican party of the county of Menominee.   Said primary election was held under and by virtue of an act entitled :

" An act relative to the nomination of party candidates for public office, and delegates to political conventions, to regulate primary elections and to prescribe penalties for violation of its provisions." Act No. 4, Extra Session 1907.

At said primary election in the first precinct of the

township of Spalding, in said county, all of the votes of all voters were cast and voted by means of a voting machine, and the record of the votes cast for all the candidates voted for at said primary was taken from said voting machine, certified and returned by the board of election inspectors of said precinct to the respondent canvassing board as the returns from said precinct, and were duly received by respondent board. Under the provisions of the primary election law, petitioner applied to said board for a recount, upon the ground that the use of a voting machine at such primary was not authorized by law, and asked that the votes as returned from said precinct be not counted, for the reason that they were null and void, in effect making the claim that no lawful primary had been held in that precinct. Relator's petition was received, and an order and subpœna was issued to the said board of election inspectors to produce and deliver to said respondent board the ballot boxes containing the ballots cast in said precinct at said primary election. To which order and subpœna the inspectors returned and showed that there "were no ballot boxes used at such primary election, but that a voting machine was used for the purpose of voting and registering the vote cast by the electors at such primary election," and therefore that they were unable to produce any ballot boxes containing ballots cast at such primary, as commanded. Respondent board then denied relator's petition for recount, on the ground that it was bound by the certified statements of the inspectors of election, and the board has no power to inquire into the matter.

A writ of mandamus is asked in this proceeding to compel the respondent board to reconvene and recount or recanvass the votes cast for said candidates for the office of prosecuting attorney for said county, and to hold and treat null and void the alleged returns from the precinct in question, and such further order as may be necessary to give relator full relief in the premises. The facts herein above stated appear from the record before us undisputed, and the further fact is admitted that, if the votes as re-

turned from the precinct in dispute could not be considered by respondent board, the relator had received a plurality of all the votes cast for candidates for the office of prosecuting attorney on the republican ballot. On the part of respondents it is urged before us, *first*, that the use of a voting machine is permissible at primary elections; *second*, that if the primary law cannot be so construed as to intend the use of voting machines, yet if used in good faith, and the choice of the electors is expressed, no fraud or prejudice appearing, the use of the voting machine ought not to invalidate the election.

The first contention, as far as express enactment of the legislature is concerned, must be determined against respondents. A primary election is not an election to public office. It is merely the selection of candidates for office by the members of a political party in a manner having the form of an election. The law provides:

"At all State, county, city, village and township elections hereafter held in the State of Michigan, ballots or votes may be cast, registered, recorded, and counted by means of voting machines." Act No. 287, Pub. Acts 1907, § 1.

The elections referred to are the elections where persons are given public offices by a plurality of the votes of all the electors voting thereat. Unless by the terms of the primary election law it can be fairly inferred that the use of voting machines was intended, or that such machines are adaptable to the requirements of such law, we must hold that they cannot be used. This law provides:

" The provisions of the general election law relative to the furnishing of ballots, * * * arrangement of booths, * * * powers and duties of inspectors, manner of conducting the election, and all other matters, shall be applicable hereto except in so far as the provisions thereof may be inconsistent herewith." Act No. 4, Extra Session 1907, § 34.

This provision by its terms expressly limits the application of the general election laws, as there are inconsistent provisions.

This was a general primary election for all political parties, held in every precinct in the State, to vote for party candidates for the office of governor and lieutenant governor, and in districts, counties, etc., where parties had decided for direct nomination of candidates, for such other candidates as might be necessary. The official primary election ballots for each party are furnished by the board of election commissioners of each county, and the law provides that they "shall contain the name of the political party for which they are to be used." The ballots are printed on a different colored paper for the different parties. It is also provided (section 25):

"The names under heading designating each official position shall be alternated on the ballots of each party casting at least five per cent. of the vote cast in the county or political subdivision at the preceding November election, and printed in the following manner: *First.* The forms shall be set up with the names of such candidates arranged alphabetically, in order according to surnames. In printing each set of tickets for the several election precincts, the positions of the names shall be changed in each office division, as many times as there are candidates in the office division in which there are the most names. As nearly as possible an equal number of tickets shall be printed after each change. In making the changes of position, the printers shall take the line of type at the head of each office division and place it at the bottom of the division, and shove up the column so that the name that before was second, shall be first after the change. After the ballots are printed, and before being trimmed, they shall be kept in separate piles, the one pile for each change of position, and shall then be piled by taking one from each pile and placing it upon the pile to be trimmed, the intention being that every other ballot in such pile shall have the names in a different position. After the pile is made in this manner, the ballots shall be numbered consecutively on the upper right hand corner upon the front of the ballot, with a perforated line across said corner, underneath the said number, so that the corner with the number can be torn off. After that, the ballots shall be trimmed and done up in sealed packages and distributed for use at the primary election the same as is re-

quired by law for the distribution of ballots at the general election."

Other provisions of this law are as follows:

"SEC. 35. After the polls are open at a primary election any elector who is legally qualified and enrolled as hereinbefore provided, shall, before entering the booth, be furnished a ballot of the political party with which he is enrolled, and no other. It shall be incumbent upon him to state to the inspector who has the ballots in charge, the party ballot he desires, which, if he is enrolled as a member of the party represented by said ballot, and if his right thereto is not challenged, shall be delivered to him forthwith. Any voter enrolled as a member of any political party for which no ballots have been prepared, shall not be permitted to vote any other party ballot at such primary election.    *    *    *

"SEC. 36. The enrolled voter after having received his ballot, shall enter a booth, and while there concealed from view prepare such ballot by making a cross in the square at the left of the names of such candidates as he may desire to vote for, but in no case for more candidates for any office than is indicated under the title of such office. He may, however, vote for any person whose name is not printed on the ballot by inserting such other name in such manner as shall make it a substitute for any name which is printed thereon or where no candidate's name appears upon the ballot."

Obviously all of these requirements were enacted by the legislature to prevent voters from voting for any except members of their respective parties, and also for the purpose of giving to each candidate equal advantage with his party competitors as far as position upon the ballot is concerned. Whether for the reasons indicated or for other reasons, every enrolled voter and every candidate is entitled to have the primary held and the ballots cast and counted as provided by the law, and provision must be made by those in authority to enable the electorate to exercise the rights given them under the law. We do not think that the voting machine can be adapted to this law and used to carry out all of its mandatory provisions. Once in the voting machine, the voter may vote the ticket

of any party, or for any individual of any party, and by so doing defy the prohibition of the statute. It is absolutely impossible that the requirements of law relative to the changes of position of the names of candidates upon the ballots can be carried out by the use of voting machines. In the case of *Baker* v. *Board of Election Com'rs of Wayne Co.*, 110 Mich. 635, this court said, at page 639:

"We think that, whether the statute providing for a distinct place upon the ballot for each of the several tickets to be voted for was designed simply to avoid confusion, or in part to furnish information to the voter, it is a provision which should be observed in making up the ticket."

If this can be said where the reason for the provision was uncertain, how much greater the necessity for observing the provision of the law, where it is evident the intention of the legislature was to give each candidate equal chance for the benefit of position upon the ballot.

This court has also held that the vote by a voting machine is a ballot within the meaning of the Constitution and laws, and such voting by machines under our election laws, general and special, has been held legal. But the primary law provides (section 20):

"Ballots other than those furnished by the board of election commissioners, according to the provisions of this act, shall not be used, cast or counted in any election precinct at any such primary election."

It appearing that there is no provision of law which permits the use of voting machines at primary elections, and also that the mandatory provisions of the law cannot be carried out if such machines are used, thereby defeating the purpose and intent of the legislature, it follows that the use of a voting machine at such primary was unlawful. By the provisions of this law a primary election could only be held through and by the use of ballots. No ballots or ballot boxes were used in the first precinct of the

township of Spalding.   The returns made from such precinct were therefore a nullity, and could not be considered by respondent board, for the reason that no primary election was held in such precinct.   Petitioner was correct in his contention, and respondent board should have discarded said alleged returns.

The writ of mandamus will issue, according to the prayer of the petition, directing said board to reconvene, recount, and recanvass the votes cast at such primary election in said county for the office of prosecuting attorney on the republican ballot, and not to consider or count the votes contained in the alleged returns from the election precinct in dispute, and to count and canvass no votes from said precinct.

GRANT, C. J., and BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.

OSTRANDER, J. (*concurring*).   It is clear that the provisions of the primary election law for the use of ballots at such elections cannot be observed if voting machines are employed.   Many of these provisions are expressly designed to insure the character and the safety of the election, and in my opinion the one which reads that "ballots other than those furnished by the board of election commissioners, according to the provisions of this act, shall not be used, cast or counted in any election precinct, at any such primary election," is mandatory, and is controlling of the right of the candidates and the powers of the inspectors.   It appears upon the petition and answer, as it appeared to the board of canvassers when a recount was demanded, that the inspectors of election in the particular precinct counted and made return of ballots other than those furnished by the board of election commissioners, and did not count or make return of any ballots so furnished.   A candidate, pursuing the remedy—the appeal—afforded by section 41 of the act, has made it appear to the board of canvassers that, notwithstanding the

return of the inspectors of election, there was, in fact, no election held. There should, therefore, have been no return made, and it was error for the inspectors to return that any votes had been cast.

The return should be disregarded, and the vote of the county canvassed accordingly.