LOCAL UNION NO. 876, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS v. STATE LABOR MEDIATION BOARD.

1. COURTS—CIRCUIT COURT—MANDAMUS—GOVERNOR.

A circuit court does not have jurisdiction to issue a writ of mandamus against the governor (3 Comp. Laws 1929, § 15186).

2. MASTER AND SERVANT—LABOR MEDIATION ACT—PURPOSE.

The labor mediation act is intended to prevent strikes, lockouts and other forms of industrial strife, is not restricted to controversies in privately owned factories and utilities but is to be liberally construed and is all-inclusive so as to promote the settlement of all labor disputes occurring in the State (Act No. 176, §§ 1, 13, 19, Pub. Acts 1939).

3. SAME—SETTLEMENT OF LABOR DISPUTES IN PUBLIC UTILITIES—POLICE POWER.

It is a matter of general public concern and well within the police power of the State to attempt to prevent disputes between employees and employers not only in manufacturing concerns and factories but also in public utilities whether privately or publicly owned and operated.

4. MUNICIPAL CORPORATIONS—HOME RULE CITIES—LEGISLATURE—POLICE POWER.

The home rule provision of the Constitution does not deprive the legislature of its power to enact laws affecting municipalities operating under that provision except as to matters of purely local concern and the right reserved to the legislature to pass general laws permits it to enact measures under the police power or other general powers and require municipalities to observe same (Const. 1908, art. 8, § 20 *et seq.*).

5. MASTER AND SERVANT—MUNICIPAL CORPORATIONS—ELECTRIC PLANT—PUBLIC UTILITY—LABOR DISPUTES—STATE LABOR MEDIATION BOARD.

Under the State mediation act requiring mediation under the auspices of the State labor mediation board of labor disputes between employees and employers where latter are operating a public utility or any other industry affected with a public interest, an electric plant owned and operated by a home rule city and furnishing light and power for municipal, industrial and residential use within and without the corporate limits of the city is subject to the act (Act No. 176, §§ 1, 9, 13, 19, Pub. Acts 1939).

Mandamus by Local Union No. 876, International Brotherhood of Electrical Workers, and Adrian J. Van Horn to compel the State Labor Mediation Board to notify the Governor to appoint a special commission to arbitrate a labor dispute. City of Grand Rapids intervened as party defendant. Sub-

mitted June 12, 1940. (Calendar No. 40,986.) Writ granted September 13, 1940.

*Willis B. Perkins, Jr.* (*G. Douglas Clapperton,* of counsel), for plaintiff.

*Thomas Read,* Attorney General, *Edmund E. Shepherd* and *Arch M. Black,* Assistants Attorney General, for defendant.

*Ganson Taggart,* for intervener.

CHANDLER, J. One petitioner, Local No. 876 of the International Brotherhood of Electrical Workers, is a union located in the city of Grand Rapids, and the other petitioner is one of the 15 employees of the Grand Rapids street lighting department, all of whom belong to the union which is the duly chosen representative of the workers in the department.

The city of Grand Rapids, a city governed under a home rule charter, owns and operates the power plant which furnishes electrical power for the street lights of the city and the lights in the municipal buildings. Power for lighting also is supplied to the Kent county detention hospital for which the city is paid by the county. The lighting department furnishes power and light to a municipal tourist camp located outside the city limits but which is operated by the city. This power is sold at daily or weekly rates by the city to the users of the facilities of the camp. The department also furnishes power and light to a ticket booth operated by the Grand Rapids Motor Coach Company, a privately owned utility corporation, which pays the city for such service. Power is also supplied to municipally operated booster pumps, which in times of heavy demand are used to supplement the regular pumps in supplying water to city reservoirs. Water is

supplied to city residents and local concerns and also to companies and small municipalities located outside the city.

In February, 1939, the employees of the lighting department chose a committee to negotiate with the city commission for better wages, hours and working conditions. Not being successful in these negotiations, the members of the union voted to strike on September 11, 1939, and on the same day notified the city manager and the state labor mediation board of the dispute, the issues, and the strike vote taken, in accordance with the provisions of Act. No. 176, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 8628-1 *et seq.*, Stat. Ann. §§ 17.454[1] *et seq.*). This was the 30-day notice required by section 13. The board acknowledged the notice and stated that it would handle the matter. On October 6, 1939, one of the commissioners telegraphed the Grand Rapids manager of the union that the attorney general had advised the labor board that it had no jurisdiction to handle the matter because the city was a home rule city. On December 6, 1939, the Governor denied a request that he appoint a special commission to arbitrate the dispute in accordance with section 13 of the act. The governor declared he could not go contrary to the attorney general's opinion. The union has not ordered a strike for the employees of the lighting department.

Plaintiffs filed a petition for an order to show cause why mandamus should not issue in this court, no circuit court having jurisdiction.* An order to show cause was issued, and the labor board filed its return thereto. Plea to said return was filed by plaintiffs; a motion to refer to the circuit court of Ingham county to take testimony on issues of fact was made but denied by this Court. Defendant city

---

* See 3 Comp. Laws 1929, § 15186 (Stat. Ann. § 27.2230).—RE-PORTER.

of Grand Rapids petitioned to intervene, and this Court granted the petition on condition that such intervention should be in subordination to the then status of the proceedings. Return was filed by the city and plea to said return was filed by plaintiffs.

The controlling question may be stated as follows: Is the street lighting commission of the city of Grand Rapids a public utility or industry affected with a public interest within the meaning of section 13 of the labor mediation act, being Act No. 176, Pub. Acts 1939?

If the answer is in the affirmative the board must comply with the provisions of the act requiring it to notify the Governor that a special commission should be appointed to take steps to effect an adjustment and settlement of the differences.

The general purpose of the act is set forth in section 1 as follows:

"It is hereby declared as the public policy of this State that the best interests of the people of the State are served by the prevention or prompt settlement of labor disputes; that strikes and lockouts and other forms of industrial strife, regardless of where the merits of the controversy lie, are forces productive ultimately of economic waste; that the interests and rights of the consumers and the people of the State, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such disputes under the guidance and supervision of a governmental agency will tend to promote permanent industrial peace and the health, welfare, comfort and safety of the people of the State."

It is evident from this legislative expression of policy that the act is intended to prevent strikes and lockouts and other forms of industrial strife for the good of the people of the State of Michigan. The language of the section is not restrictive in scope,

but rather it appears to be broad and all-inclusive so as to promote the settlement of all labor disputes occurring in the State.

As further evidence of the broad scope of the act, there is section 19 which states:

"This act shall be deemed an exercise of the police power of the State of Michigan for the protection of the public welfare, safety, prosperity, health and peace of the people; and all the provisions of this act shall be liberally construed for the accomplishment of said purposes."

This section leaves no doubt as to the intent of the legislature to have this act apply to all labor disputes in the State in the interests of the public welfare.

The section of the act which the petitioners contend is applicable to this dispute reads in part:

"SEC. 13.  In the event a dispute should arise between employees and employer, where the employer is operating a public utility, or hospital, or any other industry affected with a public interest and before any strike shall be engaged in or put into effect or before any lockout or change in normal operations shall be made, the notice provided in section 9 hereof must be given and there must be no interference with production for a period of 30 days from the giving of such notice, during which time the governor shall appoint 3 qualified and disinterested residents of the State as a special commission which shall undertake to mediate the dispute."

Defendants contend that the act cannot apply to a home rule city, and that this dispute is a matter of purely local concern over which the legislature has no control.  In support of this position, many cases are cited which uphold the principle that the State through the legislature cannot control the

affairs of a city or town which are purely local in character.

· But is a labor dispute involving employees of a municipal street lighting department purely of local concern? Suppose the employees demand better wages or working conditions and because their employer, the officials of the city, refuse to negotiate, they elect to strike. In sympathy, other affiliated unions strike and possibly shut off the electric power and light from a large portion of the State. Further, suppose the strike is of some duration, can it be said to be a purely local matter when it is a well-understood fact that strikes and labor disputes can have serious economic repercussions on the general public, and this in addition to the physical violence, disorder and strife which often accompany such disputes? It is a matter of general public concern and well within the police power of the State to attempt to prevent disputes between employees and employers not only in manufacturing concerns and factories but also in public utilities whether privately or publicly owned and operated. The nature of the ownership will make no difference in the deleterious effect of the labor disputes on the general public. The act was intended to alleviate labor difficulties in general and not only disputes in privately owned factories and utilities.

The home rule provision of the Constitution does not deprive the legislature of its power to enact laws affecting municipalities operating under that provision except as to matters of purely local concern.* A labor mediation statute concerns the welfare of the State as well as the welfare of the particular municipality. The right to pass general laws is still reserved to the legislature of the State, and consequently it is still competent for the State

---

* See Const. 1908, art. 8, § 20 *et seq.*—REPORTER.

through the law-making body to enact measures pursuant to the police power or pursuant to other general powers inherent in the State and to require municipalities to observe the same.

The case of *Wood* v. *City of Detroit,* 188 Mich. 547 (L. R. A. 1916 C, 388), involved the power of the legislature to apply the workmen's compensation act to municipalities. The act specifically provided that it should apply to cities and its constitutionality was questioned. However, the court upheld the statute and upheld the power of the legislature to enact general laws affecting the private governmental functions of cities. The court said:

"The subject of the legislation which is in question here is a social subject, in its very nature referable for community action to the State itself. A social theory needed to be crystallized into law. Its nature was such that no community less than the State could be appealed to for this purpose. The theory of this and of similar legislation includes the essential idea that the industrial worker is himself a social asset and ought not, in any case, to bear the whole result of a personal injury arising out of and in the course of his employment; that society at large ought to share the loss. The subject is one of governmental control, of public policy, necessarily committed to the legislature. Whether it is or is not denominated a police regulation, municipal corporations are, for the purpose of carrying out such a measure, subject to legislative control."

In 11 Am. Jur. p. 616, § 17, it is stated:

"A constitutional provision that the legislature shall not enact, amend, or repeal any municipal charter and granting to the local voters of every city and town the power to enact and amend a municipal charter does not operate to exempt a city having a home rule charter from legislative enact-

ments pertaining to the general welfare of the State.''

Further authority for the rule that home rule cities are subject to State legislative acts affecting the general welfare of the State is *City of Kalamazoo* v. *Titus,* 208 Mich. 252, wherein it was held that the State legislature and not the city could regulate the rates of public utilities even though they operate only within the city. In *Logansport* v. *Public Service Commission,* 202 Ind. 523 (177 N. E. 249, 76 A. L. R. 838), it was so held even in the case of a municipally owned utility.

In the case of *City of Phoenix* v. *Kidd,* 54 Ariz. 75 (92 Pac. [2d] 513), rehearing reported in 54 Ariz. 123 (94 Pac. [2d] 428), a home rule city claimed that as such it was not subject to the State minimum wage law. The court held that,

"The self-governing cities of the State are subject to the provisions of any general law adopted as a matter of State-wide policy, regardless of any special charter provisions, and * * * the minimum wage law is one of that nature, so that it supersedes any provision of the charter or ordinance of the city of Phoenix which may be contrary thereto."

See, also, *Atkin* v. *Kansas,* 191 U. S. 207 (24 Sup. Ct. 124); *Keefe* v. *People,* 37 Col. 317 (87 Pac. 791, 8 L. R. A. [N. S.] 131).

A labor mediation statute is as much within the police power of the State as a minimum wage act, and we can see no basis for holding that a city operating a street lighting plant is not subject to the law. Furnishing the city with street lights as well as furnishing light and power for various other purposes clearly brings this city department within the meaning of the act as a "public utility, or hospital, or any other industry affected with a public

interest." In fact, in *Veldman* v. *City of Grand Rapids*, 275 Mich. 100, the court indicated and the brief for the city admitted that this same street lighting department was a public utility.

The writ may issue as prayed.

BUSHNELL, C. J., and SHARPE, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.