GALLAGHER v KEEFE

Docket No. 206705. Submitted August 11, 1998, at Grand Rapids. Decided October 27, 1998, at 9:15 A.M.

Byron P. Gallagher, after he was defeated by Linda M. Keefe in the general election for Ingham County Commissioner for the ninth district, brought an action for quo warranto in the Ingham Circuit Court against Keefe, alleging that Keefe was an ineligible candidate under MCL 46.411; MSA 5.359(11) because at the time she filed her affidavit of identification for her party's primary election she was not a resident and registered voter of the ninth district. The court, Lawrence M. Glazer, J., granted summary disposition for the plaintiff on the ground that there existed no genuine issue of material fact and the plaintiff was entitled to judgment as a matter of law. The defendant appealed.

The Court of Appeals *held*:

1. The plaintiff had standing to bring the action under MCR 3.306(B)(2) or 3.306(B)(3). MCR 3.306(B)(1)(b) provides that an action for quo warranto is to be brought by the Attorney General when the action is against a person who usurps, intrudes into, or wrongfully holds or exercises an office in a public corporation created by this state's authority. Assuming that the office of Ingham County Commissioner is an office in a public corporation created by this state's authority, MCR 3.306(B)(3) allows a person to apply to the Attorney General to have the Attorney General bring an action and, if the Attorney General declines such application, allows the person to bring the action personally by leave of the court. In this case, the plaintiff obtained the court's leave to bring his action after the Attorney General declined his request for an action by the Attorney General. Conversely, assuming that the office of Ingham County Commissioner is not an office in a public corporation created by this state's authority and that an action for quo warranto involving that office is not among those that is to be brought by the Attorney General, MCR 3.306(B)(2) allows the action to be brought by the prosecuting attorney of the proper

county, without leave of court, or, as here, by a citizen of the county by special leave of the court.

2. The plaintiff's action was not barred by laches. In an action for quo warranto, the relevant inquiry concerning laches is whether the action was commenced within a reasonable time, taking into account the excuse for delay, the probable harm to the defendant, and the detriment to the public. In this case, the defendant has not shown that the plaintiff's delay in bringing the action caused harm to the defendant and detriment to the public.

3. The trial court did not err in finding that the defendant had not satisfied the state-law requirements for candidate eligibility. MCL 46.411; MSA 5.359(11) provides that candidates for the office of county commissioner shall be residents and registered voters of the district which they seek to represent and, if elected, shall remain so to hold their office. This residency and voter-registration requirement must be met as of the date a candidate files for election to office, not as of the date of the primary as the defendant argues. The defendant became a candidate for office when she filed an affidavit of identification. At that time, the defendant was not a resident or registered voter of the district she sought to represent. Accordingly, the defendant was not an eligible candidate. The office of Ingham County Commissioner for the ninth district is vacant as of the date of the Court of Appeals opinion and must be filled pursuant to MCL 46.412; MSA 5.359(12).

Affirmed.

JANSEN, J., concurring in part and dissenting in part, stated that although the plaintiff had standing to bring the action under MCR 3.306(B)(2) and laches does not bar the plaintiff's action, the defendant satisfied the state-law requirements for candidate eligibility. A primary election is not an election for public office but is merely the selection of candidates for office by members of political parties, and a person is not a candidate for office until nominated by a party in a primary or a convention. The defendant was already a resident and registered voter of the ninth district before she became a candidate. The trial court's order granting summary disposition in favor of the plaintiff should be reversed and the results of the general election held on November 5, 1996, should be upheld.

1. EQUITY — LACHES — QUO WARRANTO.

Laches, as a defense to an action for quo warranto, involves a determination whether the action was commenced within a reasonable

time, taking into account the excuse for delay, the probable harm
to the defendant, and the detriment to the public,

2. ELECTIONS — COUNTY COMMISSIONERS — RESIDENCY — VOTER REGISTRATION.

A candidate for the office of county commissioner must be a resident
and registered voter of the district the candidate seeks to represent
as of the date the candidate files an affidavit of identification with
the county clerk's office (MCL 46.411; MSA 5.359[11]).

*Lynch, Gallagher, Lynch & Martineau, P.L.L.C.* (by
*Richard J. Garcia*), for the plaintiff.

*Miller, Canfield, Paddock and Stone, PLC* (by
*Michael J. Hodge* and *Sherry L. Katz-Crank*) and
*Brookover & Fleischmann, P.C.* (by *George M.
Brookover*), for the defendant.

Before: SAAD, P.J., and JANSEN and HOEKSTRA, JJ.

HOEKSTRA, J. In this quo warranto action plaintiff
challenges defendant's successful election to the
office of Ingham County Commissioner for the ninth
district. The lower court granted plaintiff summary
disposition pursuant to MCR 2.116(C)(10), and defen-
dant appeals as of right from that order. We affirm.

On May 9, 1996, defendant filed an affidavit of iden-
tification with the Ingham County Clerk's Office and
paid the filing fee. See MCL 168.558(1); MSA
6.1558(1). She obtained the nomination of the Demo-
cratic Party at the primary on August 6, 1996, and at
the general election on November 5, 1996, succeeded
in defeating plaintiff, the Republican incumbent.
Before defendant took office in January 1997, plaintiff
initiated this action on December 12, 1996. Plaintiff
filed a motion for summary disposition pursuant to
MCR 2.116(C)(10), arguing that defendant had not sat-

isfied the state-law eligibility requirements for a candidate, MCL 46.411; MSA 5.359(11), because at the time defendant became a candidate for the election, she was neither a resident nor a registered voter in the district she sought to represent. The lower court agreed and granted plaintiff's motion, rejecting defendant's arguments that plaintiff's suit was barred by the doctrine of laches and that plaintiff lacked standing to bring suit against defendant.

In the first of two assignments of procedural error, defendant asserts that the lower court erred in finding that plaintiff had standing to bring his suit pursuant to MCR 3.306(B)(2). Defendant argues that the lower court should have instead applied MCR 3.306(B)(3)(a)-(b) and found that plaintiff did not have standing to bring suit because he lacked a "proper interest." The interpretation of court rules is a question of law that we review de novo on appeal. *In re Neubeck*, 223 Mich App 568, 570-571; 567 NW2d 689 (1997). In pertinent part, the court rule states the following:

> (B) Parties.
>
> (1) Actions by Attorney General. An action for quo warranto is to be brought by the Attorney General when the action is against:
>
>          \*       \*       \*
>
> (b) a person who usurps, intrudes into, or wrongfully holds or exercises an office in a public corporation created by this state's authority;
>
>          \*       \*       \*

(2) Actions by Prosecutor or Citizen. Other actions for quo warranto may be brought by the prosecuting attorney of the proper county, without leave of court, or by a citizen of the county by special leave of the court.

(3) Application to Attorney General.

(a) A person may apply to the Attorney General to have the Attorney General bring an action specified in subrule (B)(1). The Attorney General may require the person to give security to indemnify the state against all costs and expenses of the action. The person making the application, and any other person having the proper interest, may be joined as parties plaintiff.

(b) If, on proper application and offer of security, the Attorney General refuses to bring the action, the person may apply to the appropriate court for leave to bring the action himself or herself. [MCR 3.306. See also MCL 600.4501; MSA 27A.4501.]

In general, the effect of MCR 3.306 depends on whether the court rule assigned the action to the Attorney General. This case, which concerns plaintiff's allegation that defendant wrongfully holds or exercises office, would be a case within the purview of those assigned to the Attorney General provided that Ingham County is within the definition of a "public corporation created by this state's authority," as the phrase is used in MCR 3.306(B)(1)(b). Courts have not yet resolved the parameters of this definition. See 4 Martin, Dean & Webster, Michigan Court Rules Practice, pp 438-443. However, whether courts should employ a comprehensive definition, so as to include counties, or a more restricted definition, so as to include only quasi-proprietary corporations such as park authorities or drainage districts, is irrelevant here because under either part of the court rule,

plaintiff has standing to maintain this action against defendant.

Assuming arguendo that an Ingham County Commissioner is not an officer of a public corporation and that the action is not assigned to the Attorney General, plaintiff has standing pursuant to MCR 3.306(B)(2) because he is a citizen of the county and obtained leave of the lower court to bring this action. Conversely, assuming arguendo that an Ingham County Commissioner is an officer of a public corporation and that the action is assigned to the Attorney General pursuant to MCR 3.306(B)(1)(b), plaintiff has standing pursuant to MCR 3.306(B)(3)(b) because the Attorney General declined plaintiff's request to bring the action and plaintiff obtained leave of the lower court to bring this action himself. See *Ballenger v Cahalan*, 145 Mich App 811, 818; 378 NW2d 607 (1985) ("A private citizen, even one claiming title to the contested office, has no standing until a proper request has been made to the Attorney General and he has refused.").

Referencing the last sentence of MCR 3.306(B)(3)(a), defendant argues that plaintiff, a Republican, cannot have a "proper interest" in maintaining an action challenging the outcome of a Democratic primary. In support of this position, defendant imprudently relies on two inapposite decisions of out-of-state courts and on the statement in *Ferency v Secretary of State*, 190 Mich App 398, 415; 476 NW2d 417 (1991), vacated in part 439 Mich 1021 (1992), that "primary elections are . . . primarily party functions." Defendant's argument is without merit. First, defend-

ant's reliance on the phrase "proper interest" is misplaced because the last sentence of MCR 3.306(B)(3)(a) concerns the joinder of a party in addition to "the person making the application." Additionally, nothing in the court rule prompts the inference that a plaintiff's standing to challenge an election is dependent on the plaintiff's political party affiliation or membership. Rather, the only restriction on the face of the court rule is that the person who is granted leave to bring the action must be the one who gave the information to the Attorney General. MCR 3.306(B)(1); MCR 3.306(B)(3)(b). See also MCL 600.4501; MSA 27A.4501 ("If the attorney general receives information from a private party and refuses to act, that private party may bring the action upon leave of court."). The personal interest of the person applying for leave of the court is irrelevant. *Grand Rapids v Harper*, 32 Mich App 324, 328-329; 188 NW2d 668 (1971). Therefore, we find that the lower court reached the right result in deciding that plaintiff could maintain this action.

Next, defendant argues that the lower court erred in finding that laches did not bar plaintiff's action. We review the lower court's decision for clear error. See, e.g., *Sedger v Kinnco, Inc*, 177 Mich App 69, 73; 441 NW2d 5 (1988). The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant. *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 96-97; 572 NW2d 246 (1997). The defendant must prove a lack of due diligence on the part of the plaintiff

resulting in some prejudice to the defendant. *Id.* More specifically, in *Stokes v Clerk of Monroe Co Bd of Canvassers*, 29 Mich App 80, 87; 184 NW2d 746 (1970), · this Court found that the rule to apply in actions for quo warranto is whether the action is commenced within a reasonable time, taking into account the excuse for delay, the probable harm to the defendant, and the detriment to the public. See also *Brown v Dep't of Military Affairs*, 386 Mich 194, 199; 191 NW2d 347 (1971), citing *Grix v Liquor Control Comm*, 304 Mich 269; 8 NW2d 62 (1943).

For example, in *Grix, supra* at 274, the defendants relied on only two facts to show laches: that the plaintiff did not bring suit until nearly two years after the plaintiff was discharged and that in the meantime another person was hired and paid for the work that was formerly done by the plaintiff. Our Supreme Court held that the defendants had not shown prejudice or detriment to justify barring the plaintiff's suit. *Id.* Similarly, in *Stokes, supra* at 88, where the plaintiff instituted a quo warranto action challenging the title to the office of county supervisor approximately forty days after the defendant was officially declared the winner of the election, this Court held that the delay by the defeated candidate was not unreasonable and did not preclude maintenance of the action.

Plaintiff initiated this action approximately one month after defendant was elected and several weeks before defendant took office. Defendant accuses plaintiff of waiting until after he learned who his opponent would be and after being defeated at the

general election before filing this suit. However, the record does not establish when plaintiff discovered defendant's failure to meet the eligibility requirements of MCL 46.411; MSA 5.359(11); therefore, defendant has not shown that plaintiff lacked due diligence in pursuing his claim. Additionally, defendant has not shown that the delay resulted in prejudice. Indeed, defendant herself cannot claim prejudice where she has wrongfully held office during the duration of plaintiff's suit. Moreover, the public will not bear the burden of paying a double salary because plaintiff will not be automatically reinstated and compensated for the wages lost from his previous position. See *Brown, supra* at 199-200. Instead, when a vacancy occurs, the vacancy is filled by appointment for the remainder of the term of the office. MCL 46.412; MSA 5.359(12). Consequently, we find that the lower court did not clearly err in deciding that laches did not bar plaintiff from enforcing his claim against defendant.

Last, we address the substantive issue defendant raises on appeal, which is that the lower court erred in finding as a matter of law that defendant had not satisfied the state-law eligibility requirements for a candidate. This Court reviews de novo an order granting summary disposition. *Waldan General Contractors, Inc v Michigan Mut Ins Co*, 227 Mich App 683, 685; 577 NW2d 139 (1998). A court properly grants a motion for summary disposition pursuant to MCR 2.116(C)(10) when, except with respect to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Giving the benefit of reasonable doubt

to the nonmovant, the court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Id.*

In pertinent part, MCL 46.411; MSA 5.359(11) provides that "[c]andidates for the office of commissioner shall be residents and registered voters of the district which they seek to represent and shall remain so to hold their office, if elected." In her affidavit of identification, defendant listed an apartment within the ninth district as her residence. However, at the time defendant filed the affidavit, she physically occupied a location within the twelfth district, although she considered the apartment in the ninth district her residence because she was "welcome" to stay there. There is no merit in defendant's attempt to distinguish between occupancy and residence because "residence," for registration and voting purposes, means "the place at which a person habitually sleeps, keeps his or her personal effects and has regular place of lodging." MCL 168.11; MSA 6.1011. Even if a person has more than one residence, it is "that place at which the person resides the greater part of the time" that is considered the official residence according to the statute. *Id.* Regarding her voter registration, defendant conceded that she is uncertain when she requested that the clerk's office change her voter registration from the twelfth-district address to the ninth-district address. In any event, defendant does not contend on appeal that she met the eligibility requirements of MCL 46.411; MSA 5.359(11) on May

9, 1996, the date on which she filed her affidavit of identification.

Defendant instead argues that she was eligible to be a candidate because she moved to a location within the ninth district on or about August 1, 1996, a few days before the primary election was held. This Court has previously rejected this precise argument in *Okros v Myslakowski*, 67 Mich App 397; 241 NW2d 223 (1976), which also concerned a challenge to the right of the successfully elected defendant to hold office as a county commissioner. There, this Court held that status as a candidate regarding residency and voter requirements is determined as of the date that the candidate files for election to the office, not the date of the primary. *Id.* at 401-402.

Defendant argues that this Court's subsequent decision in *Ferency, supra,* requires us to overrule *Okros.* Defendant's position rests on the panel's statement that "the purpose of the primary election for partisan offices is to select each major party's nominees for a particular office." *Ferency, supra* at 415-416, citing *Line v Bd of Election Canvassers of Menominee Co,* 154 Mich 329, 332; 117 NW 730 (1908). Defendant argues that this statement supports her position that the status of a candidate regarding residency and voter requirements is determined as of the date of the primary. However, the issue before this Court in *Ferency* was the constitutionality of closed presidential primaries in Michigan, not the eligibility requirements for a candidate to run for office. Therefore, we are not persuaded by defendant's reading of *Ferency.*

Defendant also asserts that we are not bound by *Okros, supra* at 401-402, because the statement on which we rely was dicta. We disagree. "[S]tatements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication." *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985). In *Okros, supra* at 401, in order to decide whether manifest injustice would result from allowing the default judgment to stand, this Court was required to judge the merits of the defendant's argument, which was that a candidate's eligibility is determined as of the date of the primary. Therefore, the statement about when a candidate's eligibility to run for office is determined was not dicta but was essential to resolving the case.

Even if we agreed with defendant that this Court's statement in *Okros, supra* at 401-402, was dicta, we would adopt the reasoning of the panel in *Okros* and hold in this case that the status of a candidate regarding residency and voter requirements is determined as of the date that the candidate files for election to the office, not the date of the primary. The requirements of MCL 46.411; MSA 5.359(11) apply to "[c]andidates for the office of commissioner." Defendant became a candidate by filing an affidavit of identification with the clerk's office and paying the filing fee. See MCL 168.558(1); MSA 6.1558(1); *Grand Rapids, supra* at 330 ("a participant in a primary election is a candidate for office"). Because defendant did not meet the requirements of MCL 46.411; MSA 5.359(11) at the time she filed the affidavit and paid the fee, she was

ineligible to run for the office of commissioner in Ingham County. See *Okros, supra* at 401. Therefore, defendant's subsequent nomination and election were void.

Accordingly, we hold that the lower court properly granted plaintiff summary disposition because there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law. The office of Ingham County Commissioner for the ninth district is vacant as of the date this opinion is released and must be filled pursuant to MCL 46.412; MSA 5.359(12).

Affirmed.

SAAD, P.J., concurred.

JANSEN, J. (*concurring in part and dissenting in part*). I concur with the majority that plaintiff has standing to bring this suit under MCR 3.306(B)(2) and that laches does not bar plaintiff's action. I respectfully dissent, however, from the majority's conclusion that defendant did not satisfy state-law eligibility requirements for a candidate in the *primary* election.

In *Line v Bd of Election Canvassers of Menominee Co*, 154 Mich 329, 332; 117 NW 730 (1908), our Supreme Court held that a primary election is not an election to public office, but is merely the selection of candidates for office by the members of a political party in a manner having the form of an election. This holding was reiterated in *Attorney General ex rel Reuter v Bay City*, 334 Mich 514, 516; 54 NW2d 635 (1952) ("A primary election is not a regular election

in any sense of the term. . . . [A] primary election is merely the selection of candidates for office by the members of a political party in a manner having the form of an election."). Subsequent history of these Supreme Court cases indicates that our Supreme Court has not overruled or modified them; thus, I believe that we are bound by these holdings. See *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993). Moreover, in *Ferency v Secretary of State*, 190 Mich App 398, 415-416; 476 NW2d 417 (1991), vacated in part 439 Mich 1021 (1992),[1] this Court stated:

> Although primary elections are run by the state and are regulated by the state election law, they nevertheless remain primarily party functions. That is, the purpose of a primary election for a partisan elective office is not to narrow the field of candidates down to two candidates who then run off in the general election (as in the case in primary elections for nonpartisan office). Rather, the purpose of the primary election for partisan offices is to select each major party's nominees for a particular office.

I acknowledge that this Court in *Okros v Myslakowski*, 67 Mich App 397, 402; 241 NW2d 223 (1976), held that the defendant's nomination and subsequent election were void where the defendant had failed to register to vote when he filed for the position of commissioner in Macomb County. This Court held that "[o]ne becomes a candidate when he files for election to office," and rejected the defendant's

---

[1] The only portion of this Court's opinion in *Ferency* that was vacated by our Supreme Court was the decision by this Court to allow the defendant to tax costs.

contention that status as a candidate with regard to residency and voter requirements are determined as of the date of the primary. *Id.*, p 401. This Court in *Okros* purported to rely on *Grand Rapids v Harper*, 32 Mich App 324; 188 NW2d 668 (1971), for this holding. In *Grand Rapids*, this Court held that a participant in a primary election is a candidate for office within the meaning of the city charter prohibiting any city official while in office from becoming a candidate for any other office. *Id.*, pp 329-330. This Court in *Grand Rapids* did *not* hold that one becomes a candidate when filing for election to office.

*Okros* and *Grand Rapids* are not consistent with our Supreme Court's holding in *Line* and *Attorney General*. If primary elections, properly understood to be primarily political party functions, are not elections to public office, but merely selection of candidates for office, then a participant in a primary election is not a candidate for public office, but is merely seeking the party's nomination as a candidate for office. Therefore, I would hold that one is not a candidate for office until nominated by the party in the primary. This nomination can be done in the form of an election, or is sometimes done at party conventions.[2]

Because defendant had properly established residency before the primary election, I would reverse the trial court's order granting summary disposition in favor of plaintiff and uphold the results of the general election held on November 5, 1996.

---

[2] Only the offices listed in MCL 168.534; MSA 6.1534 have primary elections.