607 N.W.2d 380 (1999)
238 Mich. App. 611
Patrick F. O'HARA, Joseph Turinsky, Anthony Ruggiero, and Janet Ruggiero, Plaintiffs-Appellants,
v.
WAYNE COUNTY CLERK, Wayne County Election Commission, and Wayne County Board of Canvassers, Defendants-Appellees, and
Secretary of State, Intervening Defendant-Appellee.
Docket No. 212199.
Court of Appeals of Michigan.
Submitted September 14, 1999, at Detroit.
Decided November 30, 1999, at 9:10 a.m.
Released for Publication March 7, 2000.
*381 John R. Hand and Butzel Long, Dearborn, (by David W. Potts); Birmingham, for the plaintiffs.
Edward Ewell, Jr., Corporation Counsel, and Mary M. Nassar, Assistant Corporation Counsel, for the defendants.
Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, and Gary P. Gordon and Michael E. Moody, Assistant Attorneys General, for the Secretary of State.
Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C. (by Andrew Nickelhoff), Detroit, for amicus curiae Michigan Democratic Party.
Before: COLLINS, P.J., and SAWYER and MARK J. CAVANAGH, JJ.
SAWYER, J.
The trial court granted summary disposition in favor of defendants on plaintiffs' action for declaratory judgment. Plaintiffs now appeal, and we affirm.
Plaintiffs filed the instant action seeking to clarify certain voting rights with respect to the August 1998 primary election. Specifically, they sought to exclude Wayne County offices from the provisions of M.C.L. § 168.576; MSA 6.1576, which restricts voters to vote for candidates of only one party in a primary election, and to allow voters to vote for candidates from more than one party in the county races. Plaintiffs' complaint further sought to have provisions of state law declared unconstitutional to the extent that they required Wayne County to adopt charter provisions requiring partisan elections for county officers.
At the heart of this case are provisions of M.C.L. § 168.576(2); MSA 6.1576(2) that provide that if a voter votes for candidates on more than one party ticket, the entire ballot is void.
Plaintiffs first argue that the trial court erred in concluding that, even assuming that plaintiffs are correct in their position that there are two separate primaries held at the same time for state and county offices, the ballot-voiding provision can be applied collectively to the state and county primaries and that it is largely irrelevant whether the state and county primaries are two separate and distinct elections instead of one primary election. Plaintiffs' argument, however, is based on the presumption that they are correct that there are two separate primaries, one for state offices and one for county offices, that happen to be held together. Because we believe that that assumption is incorrect, *382 the rest of plaintiffs' argument must also fail.
Const. 1963, art. 7, § 2 provides that a county may adopt a charter "with powers and limitations to be provided by general law...." Thus, a charter does not give a county carte blanche to adopt whatever provisions it wishes; the county is still subject to the restrictions imposed by general law. This principle was applied in Lucas v. Wayne Co. Election Comm., 146 Mich.App. 742, 381 N.W.2d 806 (1985). In Lucas, we held, inter alia, that Wayne County, even as a charter county, was subject to the provisions of the Drain Code, M.C.L. § 280.21(1); MSA 11.1021(1), that required drain commissioners to be elected to four-year terms.[1] In so holding, the Court in Lucas, supra at 750-751, 381 N.W.2d 806, also noted that M.C.L. § 45.514(1)(g); MSA 5.302(14)(1)(g) provides that
the general statutes and local acts of this state regarding counties and county officers shall continue in effect except to the extent that this act permits the charter to provide otherwise, if the charter does in fact provide otherwise.
Lucas noted that nothing in the act permitted a change in the term of drain commissioner. In the case at bar, plaintiffs point to no provision in the act allowing for an exemption in county charters from either the provisions of M.C.L. § 168.576(2); MSA 6.1576(2) or to conduct nonpartisan elections for county offices.[2]
Having established that a county charter is subject to the restrictions of state election law, we turn to the provisions of that law. MCL 168.534; MSA 6.1534 provides as follows:

A general primary of all political parties except as provided in sections 532 and 685 shall be held in every election precinct in this state on the Tuesday after the first Monday in August before every general November election, at which time the qualified and registered voters of each political party may vote for party candidates for the office of governor, United States senator, representative in congress, state senator, representative in the legislature, county executive, prosecuting attorney, sheriff, county clerk, county treasurer, register of deeds, county auditor, drain commissioner, public works commissioner, county road commissioner, county mine inspector, surveyor, and candidates for office in townships. A nomination for an office shall be made only if the official is to be elected at the next succeeding general November election. [Emphasis added.]
The reference to "a primary election" rather than "primary elections" does not support finding a legislative intent to hold several primary elections in August at the same time rather than one. Further, the fact that the statute explicitly lists county and, for that matter, township, offices as well as state offices to be included in the primary election suggests that the Legislature was envisioning a single election, not multiple elections.
In short, state law contemplates one primary election encompassing both state and local offices. Further, even charter counties are subject to that provision. Thus, plaintiffs' presumption that there are, in fact, separate primaries for state and county offices is incorrect. Because there is only one primary and not two, it does not matter if the trial court correctly or incorrectly analyzed the treatment of two separate primaries. Any such analysis is moot.
Before moving onto plaintiffs' next argument, however, we do wish to address two additional points raised by plaintiffs in *383 the above issue. First, plaintiffs rely on M.C.L. § 45.516; MSA 5.302(16) for support of their position that the state and county primaries are separate elections held at the same time. Specifically, plaintiffs quote the following sentence from that section:
The resolution shall also establish the date for a primary and general election of officers for the newly created elective offices, whose first term shall be for a period ending at the same time as that of the incumbent governor.
Plaintiffs argue that this provision emphasizes the fact that the county and state primaries are separate. This is not the case. The two preceding sentences from that section provide that the proposed charter shall be submitted to the voters at the next regular primary election, with the provision that the charter commission may provide for a special election if the next regular primary election is more than 180 days away. In that case, the charter commission shall also provide for special primary and general elections to fill the initial partial terms of any newly created offices under the charter. It does not affect any incumbents in existing offices, nor does it allow for separate elections in the future. It is merely an implementing provision to allow for the adoption and immediate implementation of a county charter at a time other than in conjunction with the regular election cycle.[3] Indeed, if anything, this provision indicates a legislative intent not to hold separate elections for charter county officers. That is, if the Legislature intended for charter counties to conduct separate elections, it would have permitted them to commence full terms under the charter immediately after its adoption, even if that meant that the county election cycle would remain out of sync with the state's four-year gubernatorial election cycle. Instead, the Legislature adopted a provision that allowed for the immediate implementation of a charter, but which also brought the county election cycle into sync with the state election cycle as soon as possible.
Plaintiffs' other argument is that the trial court got off track by analyzing the purpose of the primary election. We disagree. The trial court correctly acknowledged the purpose of a primary election. We described this purpose in Ferency v. Secretary of State, 190 Mich.App. 398, 415-416, 476 N.W.2d 417 (1991), vacated in part on other grounds 439 Mich. 1021, 486 N.W.2d 664 (1992):
Although primary elections are run by the state and are regulated by the state election law, they nevertheless remain primarily party functions. That is, the purpose of a primary election for a partisan elective office is not to narrow the field of candidates down to two candidates who then run off in the general election (as is the case in primary elections for nonpartisan office). Rather, the purpose of the primary election for partisan offices is to select each major party's nominees for a particular office. See Line v. Bd. of Election Canvassers of Menominee Co., 154 Mich. 329, 332, 117 N.W. 730 (1908) ("A primary election is not an election to public office. It is merely the selection of candidates for office by the members of a political party in a manner having the form of an election.").
The Ferency opinion goes on to describe the election process and how it is the strongest candidate from each party that survives the primary election, not the two strongest candidates overall. The opinion in Ferency, supra at 417, 476 N.W.2d 417, then makes the following point:

*384 Thus, the general November election does not consist of the two strongest candidates facing each other, but the strongest candidate from each party (plus independent candidates) facing each other. This indicates that party affiliation is not ancillary to the primary election process, but rather is the focus of the primary election. That is, the purpose of the primary is to select the strongest candidate from each party, not the two strongest candidates in the district without regard to party affiliation. Thus, primary elections are primarily party functions, unlike the general November election which merely serves to determine the candidate who appeals to the most voters and thus wins the office.
Because the purpose of a primary is to allow voters to choose the candidates of their respective parties for the general election, it is perfectly reasonable for the state to treat the August primary as one election and to restrict voters to participate in only one party's primary. The fact that Michigan follows the "open primary" system rather than the "closed primary" system does mean that voters can easily change their allegiances without the requirement that they publicly declare an allegiance.
That is, in a closed primary system, a voter would have to publicly register as a member of a party in order to vote in that party's primary, perhaps even with restrictions on changing that registration. However, with an open primary system, a voter may change allegiances as he sees fit with no requirement to publicly disclose that fact and no restrictions on changing allegiances. Michigan requires only that a voter (privately) identify himself with a particular party long enough to cast a primary election ballot. But, in light of the purpose of a primary election, to choose a party's nominees, we do not find it unreasonable for the state to require that a voter remain loyal to one party or another for the few seconds it takes to cast a ballot in a primary election. To allow otherwise would be to disregard the fact that the purpose of a primary in a partisan election is to select a party's nominees, not for the general public to elect a public official. The latter happens at the November general election.
Turning to plaintiffs' next argument, they argue that the trial court erred in holding that the ballot-voiding provision of the election law is a "general law" under Const. 1963, art. 7, § 2 and, therefore, not a restriction on the authority of charter counties. We disagree.
Plaintiffs' argument is rooted in the provisions of Const. 1963, art. 7, § 2, which allow for the adoption of a county charter subject to the "powers and limitations to be provided by general law...." Plaintiffs argue that M.C.L. § 168.576; MSA 6.1576 is not a "general law" with respect to home rule counties. We believe that plaintiffs' argument must fail on two grounds.
First, we disagree that the statute is not a "general law." It applies to any primary election held anywhere in the state for any partisan office. We fail to see how the statute could be any more general. Black's Law Dictionary (5th ed.), p. 616, defines "general law" as follows:
A law that affects the community at large. A general law as contradistinguished from one that is special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class. A law, framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which, having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law. A law that relates to a subject or a general nature, or that affects all people of [sic] state, or all of a particular class, while one relating to *385 particular persons or things of a class is a "special law."
MCL 168.576; MSA 6.1576 is precisely such a law. It applies statewide to every partisan race. It is not directed at Wayne County, nor even charter counties in general. For that matter, it is not directed solely at county races. Every voter in every precinct of the state is subject to the statute and must restrict his voting to the ballot of a single party at the primary election for every office from Governor to township trustee. We simply fail to see how M.C.L. § 168.576; MSA 6.1576 can be described as a special or local act rather than as a general law.
However, even assuming that the state election statute is not a "general law" within the meaning of Const. 1963, art. 7, § 2, that does not compel granting plaintiffs' requested remedy. Plaintiffs, in essence, maintain that charter county elections should be exempt from those provisions of the state election law that plaintiffs choose, and follow those provisions with which plaintiffs have no objections. That is, even if plaintiffs' argument regarding the state election statute's status as a "general law" is correct, that would merely mean that state law could not prohibit the Wayne County charter from having a provision that contradicts M.C.L. § 168.576; MSA 6.1576. But plaintiffs point to no provision in the Wayne County charter that allows voters to vote for the candidates of more than one party in a primary election. And, for that matter, they argue that charter §§ 2.211 and 3.112(a), which establish partisan elections, are invalid because the state unconstitutionally compelled Wayne County to include those provisions in its charter.
In other words, at best, plaintiffs' argument is premature: it is ripe for consideration only if the voters of Wayne County adopt a charter amendment to allow for multiparty voting in primary elections in Wayne County. At such time, we may consider whether Const. 1963, art. 7, § 2 empowers the county to adopt such a provision in contradiction of state law. At worst, if the implication of plaintiffs' argument is that elections for county offices are not subject to state election law because state election law is not a "general law," then it would follow that the Wayne County charter is hopelessly deficient because it contains no valid provisions for elections. In which case, we would have little choice but to set aside the charter and return Wayne County to the status of a statutory (i.e., nonchartered) county (which would be subject to the provisions of state law). In any event, we need not resolve such a dilemma because we conclude that the state election law is, in fact, a "general law" within the meaning of Const. 1963, art. 7, § 2.
Finally, plaintiffs argue that their position must be upheld in order to give meaning and purpose to the provisions of Const. 1963, art. 2, § 4. That section grants authority to the Legislature to "regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States." Plaintiffs argue that this can only refer to elections of home rule counties and cities under Const. 1963, art. 7, §§ 2 and 22. We disagree.
First, we believe that if that was the meaning of art. 2, § 4, the drafters would have specifically said so rather than using such general language. More importantly, art. 2, § 4 is not rendered a mere surplusage if we do not interpret it to refer to the provisions of article 7. Article 2 contains ten sections that deal with election law. Within those ten sections there are many provisions that regulate elections.[4] Simply put, one does not have *386 to look far beyond article 2, § 4 to find items that are "otherwise provided in this constitution" and we are not compelled to look to article 7, as plaintiffs argue, to find something for article 2, § 4 to be referring to in order to give that section meaning.
For the above reasons, we conclude that the trial court properly granted summary disposition to defendants on plaintiffs' complaint for declaratory relief. The trial court correctly concluded that the elections of charter counties are subject to the provisions of state election law, including the requirement that voters vote in only one party's primary in a given primary election.
Affirmed. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.
COLLINS, P.J., concurred.
MARK J. CAVANAGH, J. (concurring).
I concur with the result reached by the majority. Michigan does not have pure county home rule; rather, it specifically allows the Legislature to enact limitations on home rule counties. Because the Legislature is constitutionally empowered to regulate elections, plaintiffs' contention that the requirement of partisan primary elections in Wayne County is unconstitutional must fail.
The Michigan Constitution provides that a county may adopt a charter "in a manner and with powers and limitations to be provided by general law." Const. 1963, art. 7, § 2. This provision is not self-executing and must be implemented through legislative action. The enabling legislation for home rule counties requires the charter to provide for the partisan election of various county officials (county executive, sheriff, prosecutor, and so forth). MCL 45.514; MSA 5.302(14). It further provides that the "manner of nomination and election of home rule county officers shall be in all respects the same as that heretofore established for regular county officers," M.C.L. § 45.516; MSA 5.302(16), that is, partisan.
This Court has explained: "The framers of the constitution specifically sought to preserve legislative restraints upon the scope of, and powers conferred by, county charters." Ficano v. Lucas, 133 Mich.App. 268, 277, 351 N.W.2d 198 (1983). While Ficano addressed a different issue than that raised by plaintiffs, the Ficano Court clearly recognized that the Legislature has the power to put limits on county charters under the constitutional provision pertaining to elective offices. See id. This Court also recognized the legislative limits on home rule counties in Lucas v. Wayne Co. Election Comm., 146 Mich.App. 742, 381 N.W.2d 806 (1985).
Plaintiffs contend that M.C.L. § 168.576; MSA 6.1576, which prohibits voters from splitting their ballots in a primary election, is not a "general law" as used in Const. 1963, art. 7, § 2. In support of their argument, plaintiffs cite decisions from other states addressing "home rule" issues. However, the Ficano Court noted that, while the enabling legislation uses the term "home rule," the "extensive limitations imposed on charter counties are inconsistent with any notion of pure county `home rule'." Ficano, supra at 277, n. 4, 351 N.W.2d 198. Significantly, plaintiffs do not discuss the differences between the Michigan Constitution and the constitutions of the other states on whose decisions they rely.
Plaintiffs also contend that M.C.L. § 168.576; MSA 6.1576 is not a "general law" because the election of Wayne County *387 officials is a matter of purely local concern. However, in construing the applicability of legislative enactments to a home rule city, the Supreme Court has stated that the Legislature may "enact measures pursuant to the police power or pursuant to other general powers inherent in the state and to require municipalities to observe the same." Local Union No. 876, Int'l Brotherhood of Electrical Workers v. State Labor Mediation Bd., 294 Mich. 629, 636, 293 N.W. 809 (1940). The constitution empowers the Legislature to regulate all nominations and elections. See Const. 1963, art. 2, § 4. Thus, it appears that the manner of elections is a statewide concern. Furthermore, the challenged legislation is not limited to Wayne County, but applies to elections in all charter counties.
Although I conclude that plaintiffs' claims cannot be sustained under current law, I am sympathetic to their underlying argument that county elections, particularly in a home rule county, are primarily matters of local interest. I discern no compelling state interest served by requiring a county to utilize a partisan primary election to select its candidates for county offices, despite its preference for a nonpartisan primary for those races. While concurrently holding a partisan primary for statewide races and a nonpartisan primary for county races would undoubtedly complicate primary elections in the county, the difficulties do not seem insurmountable. In any case, dealing with the intricacies involved would fall to the county clerk and could be fully considered by a county contemplating the adoption of a nonpartisan primary for county races. Accordingly, I invite the Legislature to reconsider the laws mandating partisan primary elections in county races.
NOTES
[1] Lucas also held that Wayne County was subject to the provisions of Const. 1963, art. 7, § 4 that established four-year terms for other county officials.
[2] For that matter, plaintiffs also do not point to any provision in the Wayne County charter that seeks to exempt itself from those provisions even if the charter act does allow for it.
[3] For example, M.C.L. § 45.516; MSA 5.302(16) would allow the adoption of a county charter one year into the regular four-year election cycle. If that charter created the new position of county executive, a special election could be scheduled to fill that position for the remaining three years of the current election cycle. However, where a position existed both before and after adoption of the charter, such as prosecuting attorney, that position would be unaffected and the incumbent would merely serve his regular term.
[4] For example, § 1 establishes the minimum voting age and residency requirement. Section 3 prohibits the Legislature from allowing a person to vote who meets the voting residence requirements of another state. Section 5 establishes the regular general election to be on the first Tuesday following the first Monday in November of even-numbered years. Section 6 restricts who may vote on certain ad valorem property tax rate limitations. Section 7 imposes certain restrictions on the makeup of the board of canvassers. Section 8 requires provisions for recall of certain elected officials, but also imposes certain restrictions on those provisions. Similarly, § 9 establishes certain provisions for initiative and referendum petitions. Section 10 imposes term limits on certain public officials.